IDELLA BERTUCCI, Plaintiff-Appellee, v. RETIREMENT BOARD OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO, Defendant-Appellant.

First District (2nd Division)   No. 1—02—3065

Opinion filed June 29, 2004.—Rehearing denied July 27, 2004.

Burke, Burns & Pinelli, Ltd., of Chicago (Mary Patricia Burns, Vincent D. Pinelli, and Bonnie T. Kennedy, of counsel), for appellant.

Donald T. Bertucci, of Chicago, for appellee.

JUSTICE GARCIA delivered the opinion of the court:

The defendant, the Retirement Board of the Fireman's Annuity and Benefit Fund of Chicago (Board), appeals from a circuit court order reversing the Board's decision denying plaintiff, Idella Bertucci, a widow's duty-related annuity benefit pursuant to section 6—140 (40 ILCS 5/6—140 (West 2000)) of the Illinois Pension Code (Pension Code) (40 ILCS 5/1—101 *et seq.* (West 2000)). We affirm.

## BACKGROUND

The plaintiff's husband, James J. Bertucci, became a fire fighter with the City of Chicago (City) in February 1969. In September 1991, James was injured while on duty. James's injury stemmed from a fall from a fire-truck ladder. As a result of his fall, James suffered a spinal-compression fracture of the L-1 lumbar vertebra. In August 1992, James filed an application for disability benefits with the Board. In October 1992, the Board granted James duty-related disability benefits. 40 ILCS 5/6—151 (West 1992).

In December 1994, January 1997, and March 1998, James was examined by a physician for the Board, Dr. George S. Motto. James's reexaminations were statutorily prescribed; "however[,] such annual examination may be waived by the Board if the appointed physician certifies in writing to the Board that the disability of the fireman is of such a nature as to render him permanently disabled and unable ever to return to service." 40 ILCS 5/6—153 (West 1992). In his March 1998 written report to the Board, Dr. Motto determined there was "no way [James] could improve." Also in the March 1998 report, Dr. Motto found James "permanently disabled due to prior injury" and opined that James would "never return to work." James, in fact, did not return to work as a fire fighter and continued to receive duty-related disability benefits until his death from metastatic[1] lung cancer in April 2001.

In May 2001, the plaintiff, relying on section 6—140 of the Pension Code (40 ILCS 5/6—140 (West 2000)), filed an application for a widow's duty-related annuity benefit with the Board.

In June 2001, the Board held a hearing on the plaintiff's application. The plaintiff testified she and James were married in 1964 and remained married until his death. Dr. Motto testified that in March 1998, "[James] was permanently disabled due to [James's] lower-back pain," which stemmed from a spinal-compression fracture due to James's 1992 fall from the fire-truck ladder. Dr. Motto also testified that cancer was the cause of James's death and that the cancer was

---

[1]Dr. Motto testified, "Metastatic means that the cancer in question has come from another source. A different source. A different organ."

not caused by an act of duty. The Board denied the plaintiff's application for a widow's duty-related annuity benefit under section 6—140 of the Pension Code (40 ILCS 5/6—140 (West 2000)). However, the Board granted the plaintiff a widow's non-duty-related annuity benefit under section 6—141.1 of the Pension Code (40 ILCS 5/6—141.1 (West 2000)) based on its finding that James did not die in the performance of an act of duty because he died from lung cancer. The Board also granted James's disabled adult son a child's annuity (40 ILCS 5/6—147, 6—148 (West 2000)); the child's annuity award is not at issue.

In July 2001, the plaintiff filed a complaint for administrative review of the Board's decision with the Cook County circuit court. In September 2002, the circuit court heard argument and reversed the Board's decision based on section 6—140 of the Pension Code (40 ILCS 5/6—140 (West 2000)) and this court's holding in *Tonkovic v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 282 Ill. App. 3d 876, 668 N.E.2d 1126 (1996). This appeal followed.

## ANALYSIS

### I. Standard of Review

We review the decision of an administrative agency, not that of the circuit court. *Swoope v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 323 Ill. App. 3d 526, 529, 752 N.E.2d 505 (2001). Generally, "[a]n administrative agency's findings of fact are deemed *prima facie* true and correct." *Swoope*, 323 Ill. App. 3d at 528-29, citing *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204, 692 N.E.2d 295 (1998); 735 ILCS 5/3—110 (West 2000). Further, if the record contains any evidence to support the agency's decision, it should be affirmed. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88-89, 606 N.E.2d 1111 (1992). However, an administrative agency's conclusions of law are afforded less deference and are reviewed *de novo*. *Swoope*, 323 Ill. App. 3d at 529, citing *City of Belvidere*, 181 Ill. 2d at 205.

The circuit court characterized the issue before it as one of law, "[w]hether or not the Board appropriately interpreted the section 40 ILCS 5/6—140 and the *Tonkovic* case, which *** gave an analysis of that particular provision." The circuit court applied a *de novo* standard of review. The Board, while challenging the circuit court's ruling, does not contest that the issue turns on the "interpretation of its own statute." Nonetheless, the Board contends that the appropriate standard of review is the clearly erroneous standard because it is entitled to deference based on its experience and expertise. The facts, however, are not in dispute. Thus, the resolution of this case depends, not upon evidence heard by the Board or even the application of those

facts to the law (a mixed question of fact and law to which a clearly erroneous standard should apply), but upon the purely legal question of the proper interpretation of the statutory provisions governing annuity benefits for the widows of fire fighters. See *City of Belvidere*, 181 Ill. 2d at 205; 40 ILCS 5/6—140, 6—141.1 (West 2000). This is a question of law, and therefore, our review of the Board's decision is *de novo*. See *Shields v. Judges' Retirement System*, 204 Ill. 2d 488, 492, 791 N.E.2d 516 (2003).

## II. Interpretation

The Board contends that the *Tonkovic* decision, which the plaintiff maintains controls the outcome here and upon which the circuit court based its reversal of the Board's denial of duty-related benefits, is at odds with its interpretation of the controlling statute and should not be followed. Instead, the Board asserts we should follow the *Swoope* decision. In its reply brief, the Board asserts that the statute at issue in *Swoope* (40 ILCS 5/5—144 (West 1998)) and the statute at issue here (40 ILCS 5/6—140 (West 2000)) "are nearly identical with exactly the same intent" and, therefore, should be interpreted similarly.

### A. Sections 5—144 and 6—140

We agree with the Board that the legislative purpose behind sections 5—144 and 6—140 is to compensate the widows of police officers and fire fighters killed or permanently injured in the line of duty; and therefore, the statutes should be interpreted in a similar manner. 40 ILCS 5/5—144, 6—140 (West 2000).

■ In comparing section 5—144, at issue in *Swoope*, to section 6—140, at issue in this case and in *Tonkovic*, we find that they are nearly identical. 40 ILCS 5/5—144 (West 1998); 40 ILCS 5/6—140 (West 2000). For instance, the widow of a police officer in a city with over 500,000 people who dies in the line of duty is awarded an annuity equal to 75% of the police officer's salary (40 ILCS 5/5—144(a) (West 1998)); however, if the police officer dies while still working, but not in the line of duty or after he has retired, the widow's annuity is equivalent to 50% of the police officer's pension annuity (40 ILCS 5/5—136.1 (West 1998)). Similarly, the statutory provision regarding the benefits to the widow of a fire fighter in a city of over 500,000 residents is 75% of the fire fighter's salary when the fireman dies in the line of duty (40 ILCS 5/6—140 (West 2000)), but only 50% of the fire fighter's pension annuity if he dies while still working or after he has retired (40 ILCS 5/6—141.1 (West 2000)).

### B. The *Swoope* Decision

The *Swoope* court was presented with a question similar to the

one before us, whether the widow of a police officer who was deemed permanently disabled, found unable to return to work, and receiving duty-related disability at the time of his death, was entitled to a duty-related annuity benefit. In *Swoope*, the police officer received duty-related disability benefits stemming from injuries he received in an on-duty automobile collision. *Swoope*, 323 Ill. App. 3d at 527-28. The police officer continued receiving duty-related disability benefits until his death from a heart attack. *Swoope*, 323 Ill. App. 3d at 528. In its holding the *Swoope* court stated, "it is the officer's injury, and not his death, which establishes whether the officer would be able to subsequently, and at some point, resume his duties with the police department." *Swoope*, 323 Ill. App. 3d at 531. We find *Swoope* instructive and agree with the Board that Justice Theis's analysis in *Swoope* is applicable here. Because we agree with the reasoning and analysis in *Swoope*, we borrow liberally from Justice Theis's succinct opinion.

The question we address is whether a fire fighter who is permanently disabled in the course of his duties, and who dies without returning to work, should be treated like a fire fighter who dies in the line of duty or from injuries received directly in the line of duty. We hold that an affirmative answer to that question is consistent with, not only the language of the controlling statute, but also its purpose and aim. 40 ILCS 5/6—140 (West 2000).

Section 6—140 provides for the payment of a compensation annuity when "the performance of an act or acts of duty results directly in the death of a fireman, or prevents him from subsequently resuming active service in the fire department." 40 ILCS 5/6—140 (West 1998). Much like in *Swoope*, "[b]oth parties agree that [the plaintiff] must establish either of the two conditions listed in section [6—140] in order to receive a compensation annuity. Further, it is undisputed that [James's] death was not a direct result of the injury he sustained in the performance of an act of duty. The dispute, therefore, involves the interpretation of the second phrase, [the performance of an act or acts of duty that prevents him from subsequently resuming active service in the fire department]." *Swoope*, 323 Ill. App. 3d at 529.

We begin our examination of this language with the Board's admission that the two statutes, one dealing with police officers (section 5—144) and the other with fire fighters (section 6—140), "are nearly identical with exactly the same intent." "Statutory construction requires courts to ascertain and give effect to the intent of the legislature." *Shields*, 204 Ill. 2d at 493-94, citing *In re C.W.*, 199 Ill. 2d 198, 211, 766 N.E.2d 1105 (2002). Where statutory language is clear, it must be applied as written (*Shields*, 204 Ill. 2d at 494); however, "[l]egislative intent must be ascertained from a consideration of the

entire act, its nature, its object, and the consequences resulting from different constructions" (*Shields*, 204 Ill. 2d at 494, citing *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96, 566 N.E.2d 1283 (1990)).

In addressing the legislative intent behind section 5—144, the *Swoope* court stated that the "section is intended to provide extra compensation, above the regular annuity determined in the previous sections, to this select group of widows." *Swoope*, 323 Ill. App. 3d at 530. We find a similar legislative intent present in section 6—140. 40 ILCS 5/6—140 (West 2000).

The first paragraph of section 6—140 specifically includes "the widow of a fireman whose death results from the performance of an act or acts of duty." 40 ILCS 5/6—140 (West 2000). Consequently, the resolution of this issue involves the interpretation of a phrase contained in the third paragraph of section 6—140, that "performance of an act or acts of duty *** prevents him from subsequently resuming active service in the fire department." 40 ILCS 5/6—140 (West 2000). As in *Swoope*, we find the third paragraph of section 6—140 to be "a narrow expansion of this section, allowing widows of [fire fighters] whose injuries were of such character as to prevent them from subsequently resuming service as [fire fighters] to also receive this extra compensation." *Swoope*, 323 Ill. App. 3d at 531.

"When interpreting the phrase at issue, we look to the plain and ordinary meaning of the terms." *Swoope*, 323 Ill. App. 3d at 531, citing *Lulay v. Lulay*, 193 Ill. 2d 455, 466, 739 N.E.2d 521 (2000). The court in *Swoope* looked to the meaning of "subsequently" to support the "narrow expansion" of the benefits provided by section 5—144. *Swoope*, 323 Ill. App. 3d at 531; 40 ILCS 5/5—144 (West 1998). "The plain and ordinary meaning of the term 'subsequently' is 'following in time: coming or being later than something else.' " *Swoope*, 323 Ill. App. 3d at 531, quoting Webster's Third New International Dictionary 2278 (1986). "Thus, the provision refers to an injury incurred in the performance of an act of duty which prevents the [fire fighter] from resuming service as a [fire fighter] subsequent to, or following, that injury. If, at anytime after the injury, the [fire fighter] can or could possibly resume his duties as a [fire fighter], his widow is excluded from receiving compensation or supplemental annuities. Because the statute does not define an ending point to this time period, we interpret the phrase to mean that the injury was so severe, and of such a character, as to prevent the [fire fighter] from ever resuming service as a [fire fighter]." *Swoope*, 323 Ill. App. 3d at 531.

Thus, the phrase at issue means that the duty-related injury *permanently prevents* a fire fighter from *resuming* active duty with the

fire department. It is therefore the fire fighter's injury, and not his death, which establishes whether the fire fighter may subsequently resume his duties with the fire department. See *Swoope,* 323 Ill. App. 3d at 531. "[T]he focus is whether the fire fighter is injured due to an act or acts of duty and then dies without having returned to active service." *Tonkovic,* 282 Ill. App. 3d at 880.

■ Therefore, in conformity with the *Swoope* court, "we hold that, under [section 6—140's third paragraph], a widow must establish with medical evidence and testimony that her husband's injury, but for his death, would have prevented him from subsequently, or ever, resuming service with the [fire] department." *Swoope,* 323 Ill. App. 3d at 531. Although in *Swoope* the matter was remanded to the Board for an evidentiary hearing to allow the Board to make such a determination, under the facts presented here, there is no question but that the plaintiff made such a showing.

■ In the case *sub judice,* James fell from a fire-truck ladder, injured his spine, and received duty-related disability as a result of that fall. The cause of James's death was unrelated to the fall, as he died from metastatic lung cancer; however, the fall from the fire-truck ladder left James "permanently disabled" according to the Board's physician, Dr. Motto. Specifically, in his written report to the Board in March 1998, Dr. Motto determined (1) there was "no way [James] could improve," (2) James was "permanently disabled due to his prior injury," and (3) James was "never to return to work" as a fire fighter. Dr. Motto also testified before the Board, verifying his March 1998 findings and reiterating that James's duty-related injury, *i.e.,* his fall from the fire-truck ladder, had left him "permanently disabled." Therefore, the plaintiff has shown that James's injuries were permanent.

## C. Reconciling *Tonkovic*

Relying on the principle that deference is owed to an agency's interpretation of its own statute based on its experience and expertise, the Board claims the *Tonkovic* ruling is inconsistent with its interpretation of section 6—140 and therefore is "not controlling precedent." The Board continues to contend there is a "causation requirement" in section 6—140 that limits its application "to those widows whose husbands' death were 'directly' caused by an act of duty." As a fallback argument, the Board seeks to limit the *Tonkovic* holding to the facts of that case; the Board argues that in *Tonkovic,* "evidence existed *** for the court to conclude that it was the arteriosclerotic heart disease, cased [*sic*] by smoke inhalation during the performance of an act of duty, that prevented Mr. Tonkovic from

ever resuming active service." Whereas, "[i]n [James's] case, it was lung cancer which resulted in his death and ultimately prevented him from resuming active service as a fire fighter, not his back injury."

Once again we reject the Board's contention that there is a "causal connection" component in section 6—140 between the death of the fire fighter and his cause of death that must be established before a widow's duty-related annuity may be paid. As Justice Theis made clear in *Swoope*, "it is the officer's injury, *and not his death*, which establishes whether the officer would be able to subsequently, and at some point, resume his duties." (Emphasis added.) *Swoope*, 323 Ill. App. 3d at 531. Here, while it is true that James's lung cancer was not related in any way to the performance of an act or acts of duty, it was not the lung cancer that served as the basis for Dr. Motto's conclusion in March 1998 that James was "permanently disabled due to his prior injury." Contrary to the Board's assertion, it was the duty-related injury that prevented James from subsequently resuming active service. Thus, we find the Board's concerns misplaced as the interpretation of section 6—140 set out by this court in *Tonkovic* is consistent with *Swoope*.

In *Tonkovic*, a fire fighter suffered a heart attack in April 1980, while fighting a fire. *Tonkovic*, 282 Ill. App. 3d at 877. The fire fighter was awarded duty-related disability benefits based on the fact he was disabled as a result of an act of duty. *Tonkovic*, 282 Ill. App. 3d at 878. Specifically, the doctor in that case prescribed that the fire fighter "should not perform the duties associated with the position of a fire fighter." *Tonkovic*, 282 Ill. App. 3d at 878. In April 1994, the fire fighter suffered another heart attack and died. *Tonkovic*, 282 Ill. App. 3d at 878. The decedent's widow applied to the Board for duty-related annuity benefits under section 6—140 of the Pension Code. 40 ILCS 5/6—140 (West 1994). The Board denied the widow's request based on testimony that decedent's 1980 heart attack did not contribute to his death; however, the Board granted the widow ordinary, *i.e.*, non-duty-related, annuity benefits under section 6—141.1 of the Pension Code. *Tonkovic*, 282 Ill. App. 3d at 878; 40 ILCS 5/6—141.1 (West 1994). The circuit court reversed and on appeal the reversal was affirmed. In pertinent part, the *Tonkovic* court found that the Board ignored the fact that the fire fighter's heart attack had kept him from being able to return to work as a fire fighter.

"[T]he plain language of the second clause [of section 6—140 (40 ILCS 5/6—140 (West 1994))] provides that a surviving spouse is eligible for duty death benefits if the decedent fire fighter's performance of an act or acts of duty prevented him from resuming active service until his or her death. *** [T]he focus is whether the*

*fire fighter is injured due to an act or acts of duty and then dies without having returned to active service."* (Emphasis added.) *Tonkovic,* 282 Ill. App. 3d at 880.

As in *Tonkovic,* where the Board's doctor found that the fire fighter was permanently disabled and could not perform the duties associated with his previous position (*Tonkovic,* 282 Ill. App. 3d at 878), and *Swoope,* where the factor determining whether a widow whose husband died while receiving duty-related disability benefits was eligible for a widow's duty-related annuity benefit was whether the husband's disability was permanent (*Swoope,* 323 Ill. App. 3d at 531), we find that a widow must demonstrate the permanency of her husband's duty-related disability in order to be eligible for an enhanced widow's duty-related annuity benefit. The widow's duty-related annuity benefit is meant to address the risks and the accompanying injuries that may befall fire fighters in the course of carrying out their duties. The widow's duty-related annuity benefit is not meant to serve as a life-insurance policy covering all manners of death to a fire fighter. The nexus between the widow's duty-related annuity benefit and the death of a fire fighter is the permanent injury or death caused in the line of duty. If there is no connection between the death or permanent injury of a fire fighter and the carrying out of his duty, then there is no duty-related annuity benefit provided to a widow under section 6—140.

To highlight its concern over an expansive reading of section 6—140, the Board asserts "that every widow of a fireman who at the time of his death was in receipt of duty disability benefits would be entitled to receive the increased widow's benefit provided by section 6—140. *** Yet the widow of a fireman who worked thirty years and died of lung cancer while still on the job would not be entitled to such increased benefits." The Board states, "[s]uch a conclusion plainly was not contemplated by the legislature in enacting the language of section 6—140." We agree with the Board that such a conclusion "plainly was not contemplated" as the statute does not provide for a duty-related annuity benefit for "every widow of a fireman who at the time of his death was in receipt of duty disability benefits." Once again, as made clear by *Swoope* and *Tonkovic,* it is the character of the injury, and not merely receiving duty-related disability benefits, that determines whether a duty-related annuity benefit is owed to a widow upon the death of a fire fighter receiving duty-related disability benefits. As applied to this narrower subset of widows, those whose husbands were found to have sustained "permanent injury" and were, thus, unable to return to work as fire fighters, the Board fails to set out a persuasive argument regarding why this group was "plainly"

not one intended by the legislature to receive the additional duty-related annuity benefit.

Contrary to the Board's prediction that under the interpretation mandated by *Tonkovic*, "the widow of a fireman who even slightly injured his shoulder and was on disability and who later killed himself *** would also receive the duty[-related] death benefits." The widow's duty-related annuity benefit is payable *only if* the *duty-related disability* is one of a *permanent* nature. If a fire fighter slightly injures his shoulder, unless there is persuasive medical testimony that the slight injury turned into one that "prevents him from subsequently resuming active service *** the annuity *** shall not be paid." 40 ILCS 5/6—140 (West 2000); *Swoope*, 323 Ill. App. 3d at 531.

In other words, it is not true, as the Board asserts, that "any widow whose husband dies while in receipt of a duty[-related] disability benefit would be entitled to the increased [duty-related annuity] benefit regardless of the nature of the injury that led to the disability." We agree with the Board's declaration that, "the mere fact that a fireman is on disability and does not return to work[ ] does not automatically entitle the widow to receive the greater benefits." But we find that some of the widows of fire fighters who fall in that category should receive the greater benefits. Consistent with the holdings of *Tonkovic* and *Swoope*, those widows are the widows of fire fighters whose duty-related injuries, though not directly the cause of their deaths, were of such a nature that the fire fighters were permanently prevented from subsequently resuming active service. *Swoope*, 323 Ill. App. 3d at 531.

In response to the Board's many examples that it contends support its contrary position, we present the following example of why our position wins out. Relying on the Board's own fact scenario of a "fireman who dies three weeks after suffering from burns over the majority of his body" as a situation warranting a widow's duty-related annuity benefit (fire fighter 1), we ask, what of a fire fighter in the very same situation that does not "die three weeks later" but is permanently injured because of his burns, never able to return to active duty, receives duty-related disability benefits, and dies 10 years later of a heart attack (fire fighter 2). By assumption, fire fighter 1 and fire fighter 2 suffered the same injuries. Fire fighter 1's family is clearly meant to receive duty-related annuity benefits which amount to 75% of an active fire fighter's income. However, according to the Board, at the death of fire fighter 2 his family must make do on less,

or 50% of an active fire fighter's income.[2] This example suggests that the comparison should not be with fire fighter 1, but to fire fighter 3. Fire fighter 3 sustains duty-related injuries, but the character of the injury is not such as to prevent the fire fighter from returning to work after rehabilitation. Fire fighter 3 nonetheless dies before returning to work. The question becomes who is fire fighter 2 more like: fire fighter 3, whose injuries do not preclude him from returning to work, or fire fighter 1, who dies from his duty-related injury? It seems consistent with the intent and language of the statute that fire fighter 2 should be treated like fire fighter 1, as both were permanently injured (however short that period of time may have been for fire fighter 1 before his death) and unable to resume active duty.

To the extent that a bright-line rule must be drawn, however arbitrary that line may appear, it should be drawn in such a way as to benefit more, rather than fewer, families of fire fighters injured on the job. The pension statutes must be liberally construed in favor of the pensioner. *Shields*, 204 Ill. 2d at 494.

As further basis to reject the Board's argument that *Tonkovic* was wrongly decided, the Board is confronted with the *Tonkovic* decision being established law without change from the legislature. The legislature was presented with an opportunity to address the *Tonkovic* holding in its 2001 amendment to section 6—140; however, the legislature chose not to do so. 40 ILCS 5/6—140 (West Supp. 2001).

We do not accept the Board's position that, "[t]he last paragraph of section 6—140, which is the provision the *Tonkovic* court focused on exclusively, limits the preceding language in the provision that grants the annuity for the widow of a fireman whose death results from the performance of an act or acts of duty." We find the *Tonkovic* language both clear and consistent with the aim and purpose of the statute as a whole. Therefore, we interpret the language at issue in the third paragraph of section 6—140, "acts of duty *** prevent[ ] him from subsequently resuming active service in the fire department" (40 ILCS 5/6—140 (West 2000)), to mean that a widow must establish with medical evidence and testimony that her husband's injury, but for his death, would have permanently prevented him from resuming service with the fire department. See *Swoope*, 323 Ill. App. 3d at 531.

---

[2]When each fire fighter would have reached the age of mandatory retirement, the families would have been treated identically, each receiving 50% of his active salary. 40 ILCS 5/6—141.1 (West 2000). Thus, the added financial burden on the Board spans the years from the fire fighter's death to the time he would have reached mandatory retirement age. When the fire fighter dies while on duty disability after reaching mandatory retirement age, no additional widow's annuity benefit is paid.

The financial drain on the Board does not appear to be so great that fewer families should receive the widow's duty-related annuity benefit as the benefit is only paid to a fire fighter who suffers such a duty-related injury that "prevents him from subsequently resuming active service in the fire department." To the extent such injuries are permanent, his wife should be entitled to receive a duty-related annuity benefit upon the fire fighter's death and prior to his reaching the age of retirement. It appears certain that the longer the period of permanent disability, the greater the direct relation between the fire fighter's duty-related injury and the benefit that should be paid. This finding does not "undermine and make less significant the sacrifice of those who actually die in the line of duty or from a cause directly related to the injury suffered while on duty." Rather, it reinforces the sacrifices of those who are severely injured and unable to return to work because of their injuries. The families of fire fighters who are injured while on duty, permanently disabled, and unable to return to work, should receive the same benefits upon the death of the fire fighter as the families of fire fighters whose death is directly caused by their act or acts of duty.

## CONCLUSION

For the foregoing reasons, the plaintiff is entitled to an enhanced widow's annuity. 40 ILCS 5/6—140 (West 2000). We affirm the circuit court's order reversing the Board's decision.

Affirmed.

WOLFSON, P.J., and CAHILL, J., concur.