# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Reynolds v. Retirement Board of the Firemen's Annuity & Benefit Fund,**
**2013 IL App (1st) 120052**

---

| | |
|---|---|
| Appellate Court Caption | PAMELA REYNOLDS, as Special Administrator of the Estate of Doris Faust, Deceased, Plaintiff-Appellant, v. THE RETIREMENT BOARD OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-12-0052 |
| Filed | May 7, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although plaintiff's deceased was notified prior to her death that she was entitled to an increase in the annuity she had been receiving as the widow of a fireman, she never completed the paperwork necessary to effect the increase, and the assignment sections of the Illinois Pension Code and the firemen's pension fund prohibited the assignment of any potential lawsuit to exercise the rights the deceased failed to pursue during her lifetime; therefore, the claim for increased benefits abated upon her death. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-46510; the Hon. Michael B. Hyman, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Donald T. Bertucci, Ltd., of Chicago (Donald T. Bertucci, of counsel), for appellant.

Burke, Burns & Pinelli, Ltd., of Chicago (Mary Patricia Burns and Vincent D. Pinelli, of counsel), for appellee.

Panel

JUSTICE QUINN delivered the judgment of the court, with opinion.

Presiding Justice Harris and Justice Simon concurred in the judgment and opinion.

**OPINION**

¶ 1    I. INTRODUCTION

¶ 2    The administrator of the estate of a decedent who was receiving a widow's annuity sued the Retirement Board of the Firemen's Annuity and Pension Benefit Fund of Chicago (the Board) on behalf of the estate claiming that the decedent was entitled to a larger pension and sought to recoup the difference between what the decedent received and what the administrator alleged decedent was entitled to for the benefit of the heirs of the estate. The circuit court rejected the administrator's complaint and ruled that any right to seek payments of additional amounts under the pension fund in question abated when the widow/annuitant died and her estate could not be assigned those rights and had no survival rights to pursue the action. This timely appeal followed.

¶ 3    II. BACKGROUND

¶ 4    Harry Faust, born November 22, 1916, and Doris Faust, born January 25, 1922, were married on January 3, 1949. Two years later, in 1951, Henry Faust began his employment with the Chicago fire department as a fireman. He also was a member of the Firemen's Annuity and Benefit Fund of the Illinois Pension Code (the Firemen's Pension Fund). 40 ILCS 5/6-101 to 6-226 (West 2010). In 1959 and 1960, Harry Faust suffered smoke inhalation and in 1964 he injured both knees while on the job. In 1970, he applied for a duty disability pension relating to those injuries. His application was approved on May 15, 1970 and he began receiving a duty disability pension subject to annual medical reexamination. He was never declared permanently disabled. Harry Faust received duty disability benefits for almost seven years, until April 6, 1977, when he died at age 60 from causes that were not related to his on-the-job injuries.

¶ 5    His widow, Doris Faust, on her own behalf and on behalf of the two children from their marriage, applied for and was granted a widow's annuity on April 29, 1977. On September

-2-

29, 1979, Doris Faust married Siegmund Daum. This event terminated her right to receive a widow's annuity under the Firemen's Pension Fund as it existed in 1979 (Ill. Rev. Stat. 1991, ch. 108½, ¶ 6-143 (amended by Pub. Act 89-136, § 15 (eff. July 14, 1995))). Doris Faust Daum's remarriage to Siegmund Daum ended in divorce in 1981.

¶ 6        Approximately 14 years after Doris Faust's divorce, in 1995, the Illinois legislature amended the Firemen's Pension Fund to allow a widow who remarried, but then divorced, to apply for reinstatement of her widow's annuity from her deceased, prior husband/fireman. *Id*. (now 40 ILCS 5/6-143(a) (West 2010)). Because this amendment was to be applied retroactively, the Board located and notified Doris Faust of this amendment. Doris Faust applied for reinstatement and the application was granted in April 1996. Doris Faust continued to receive this widow's annuity until her death on December 25, 2009.

¶ 7        Aside from receipt of her monthly annuity, Doris Faust, on occasion sent communications to the Board. For instance both in 2002 and again, in 2003, she informed the Board of her new resident addresses.

¶ 8        By letter dated August 3, 2005, the Board sent Doris Faust a letter informing her of her right to seek a duty-related widow's annuity pursuant to this court's opinion issued in *Bertucci v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 351 Ill. App. 3d 368 (2004).[1]

¶ 9        The Board's letters, sent via regular and certified mail to Doris Faust both on August 3, 2005 and again on August 19, 2005, stated, in pertinent part, as follows:

"A recent decision by the State of Illinois Appellate Court *** held that widows of firefighters that died while in receipt of Duty Disability Benefits, whose duty related injuries, though not directly the cause of their death, were of such a nature that the firefighters were permanently prevented from subsequently resuming active service, may be entitled to receive the higher duty death annuity benefit available under ILCS 40, Act 5, Section 6-140. *** *These Duty Death Widow Benefits are not automatic*. The court requires that widows must file an application with the Board and be able to establish through medical evidence and testimony that the injury for which he was granted Duty Disability Benefits, but for his death, would have prevented him from subsequently ever resuming service with the Chicago Fire Department." (Emphasis added.)

¶ 10       The Board attached a completed application to the notices for Doris Faust to sign and return. When she did not respond to the Board's first notice, the Board sent her a second notification, again with a completed application attached, on August 19, 2005, and again by registered and certified mail. Doris Faust personally signed for the mailing, certifying that she received delivery. Doris Faust never acted on the information in the two notifications or sent in the completed application attached to the letters or otherwise contacted the Board regarding the possibility of receiving an increase in her monthly widow's annuity.

---

[1]Prior to the *Bertucci* opinion, the Board awarded duty-related widow(er)'s annuities only if the spouse died from the duty-related injuries he or she received while on active duty. In paragraph 7 of the instant complaint, plaintiff alleges that Harry Faust died from condition(s) that "were not related to the injuries that he had incurred on active duty."

¶ 11    There is no evidence in the record that Doris Faust, who was 82 at the time she received these two notifications and applications from the Board, was legally incompetent or that any of her six adult children or anyone else was given power of attorney over either her financial or medical affairs. The only information on this topic in the record is an exhibit to a pleading. It is a four-sentence letter dated February 28, 2010, two months after Doris Faust's death, signed by a former treating physician who opined that Doris Faust was unable to care for herself by 2005, and that, two years later, in 2007 she moved into Winchester Home. There are no attachments, such as medical records, to support the opinion contained in this letter nor is any explanation given of the level of care that Doris Faust began to require that may have precipitated her 2007 move into Winchester Home. There is also no description of the type of facility Winchester Home is and no location is provided.[2]

¶ 12    What we do know is that neither Doris Faust nor anyone acting on her behalf took any action following the Board's two August 2005 notifications until her death (four years and five months later) regarding the possibility that Doris Faust might have been entitled to an increase in her widow's annuity from her first husband which was reinstated in 1996.

¶ 13    The first time the Board heard from anyone regarding the topic of its 2005 notifications to Doris Faust was when one of her sons, Vern, not listed as one of the two children from her first marriage[3], contacted the Board in January 2010. Vern indicated that he was contacted by an attorney regarding the issue that Doris Faust may have been entitled to a higher annuity. The Board responded to Vern by indicating that it had informed Doris Faust of this possibility back in August 2005 but that no one ever responded to their notifications.

¶ 14    Thereafter, 10 months after Doris Faust's death, on October 26, 2010, Pamela Reynolds was appointed special administrator of the estate of Doris Faust. Reynolds filed the petition on behalf of herself and Doris Faust's five other adult children and stated in paragraph 3 of the petition that "[t]he only remaining asset of decedent is a cause of action against *** The Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago for the alleged failure to pay firefighter's widow annuity benefits to the decedent personal [*sic*] based on the death of her firefighter husband." On that same day, Pamela Reynolds filed a four-count complaint on behalf of the estate of Doris Faust for: (1) civil enforcement of the Pension

---

[2]Although Doris Faust died owning no assets and the only asset listed for her estate is this potential lawsuit, the estate administrator did not name the State of Illinois as a party with a potential interest. Doris Faust was admitted into Winchester Home from 2007 until her death. If she was an Illinois medicaid recipient, the State of Illinois medicaid division should have been notified so it could recover monies paid out for her institutionalized care in the event the lawsuit was successful.

[3]Only one daughter, Pamela born in 1959, and one son, Michael born in 1962, appear as children born to Harry and Doris on Doris Faust's 1977 application for a widow's annuity. A total of six adult children of Doris Faust seek to share in any recovery of pension monies accruing since 1977 until Doris Faust's death in December 2009, together with prejudgment and postjudgment interest.

Code; (2) a request for administrative review[4]; (3) conversion; and (4) constructive trust, and she requested that the estate be paid all amounts that Doris Faust may have been entitled to receive but did not receive during her lifetime.

¶ 15        The circuit court ruled that any rights of the widow/annuitant, Doris Faust, had abated when she died. On a motion for reconsideration where the administrator cited a Rule 23 unpublished order of this court in support of her position that the widow's rights under the pension fund survived her death (*Barry v. Retirement Board of the Firemen's Annuity & Benefit Fund*, Nos. 1-06-3036, 1-07-0730 cons. (2009) (unpublished order under Supreme Court Rule 23), the circuit court found the *Barry* case to be procedurally quite different from the instant case and that it did not provide support for the administrator's position that an administrator of an estate could institute an action following the death of the widow/annuitant.

¶ 16        For the reasons stated below, we affirm the circuit court's December 5, 2011 order which denied the special administrator, Pamela Reynold's complaint in its entirety and the December 29, 2011 order which denied her motion for reconsideration.


¶ 17                                        III. ANALYSIS

¶ 18                                     A. Standard of Review

¶ 19        Plaintiff has suggested no standard of review. Defendant provided an analysis of the various standards of review for administrative decisions. There was no administrative decision by the Board for this court to review in this case.

¶ 20        The issue of abatement and nonassignability of the decedent's widow's annuity benefits was raised for a second time in the parties' briefs in support and in opposition to the surviving count of a request for administrative review. The circuit court found this issue dispositive and dismissed plaintiff's complaint.

¶ 21        Quite simply, the standard of review this court applies when reviewing a circuit court's dismissal of a complaint is *de novo*. *People ex rel. Sklodowski v. State*, 284 Ill. App. 3d 809, 815 (1996) (pension case). In considering the dismissal, this court must view the allegations in plaintiff's complaint in the light most favorable to the plaintiff. If it appears that no set of facts could be proven which would entitle the plaintiff to relief, the dismissal should be affirmed. *Id.* The material facts in the instant case are not in dispute. The resolution of this case depends on the legal question of the proper interpretation of the statutory provisions governing annuity benefits for widows of firefighters and receive *de novo* review, as well. *Bertucci v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 351 Ill. App. 3d 368,

---

[4]The record does not indicate that any administrative action was ever filed with the Board by Pamela Reynolds, as administrator of the estate of Doris Faust, seeking any monies Doris Faust may have been entitled to during her lifetime for the benefit of and on behalf of the heirs of the estate. Instead, the administrator filed her initial action in circuit court. There exists no administrative decision on the administrator's claim for either the circuit court or this court to review. Defendant never raised a failure to exhaust administrative remedies in its appellate brief for this count.

370-71 (2004).

¶ 22                                    B. Abatement and Nonassignability

¶ 23        The preliminary issue that must be resolved is whether an administrator of the estate of a former, deceased recipient of an annuity paid pursuant to the Firemen's Pension Fund can institute a cause of action against the Board on behalf of the estate to benefit the estate's heirs. In other words, as it relates to the instant case, can Doris Faust's right to apply for enhanced widow's benefits, which she was informed of in 2005 but never pursued, be assigned to and activated in 2010 by the administrator of her estate following Doris Faust's death for the benefit of the heirs of the estate?

¶ 24        Illinois statutory law governs the administration of the Firemen's Pension Fund from which Doris Faust received her widow's annuity benefits. That law clearly provides that no "annuity or other benefit" under the Illinois Pension Code can be alienated and "shall not be assignable." 40 ILCS 5/2-154 (West 2010). This prohibition of assignment by any pensioner or annuitant of any benefit is specifically reiterated in the Firemen's Pension Fund. 40 ILCS 5/6-213 (West 2010). These sections provide the answer to the preliminary issue raised by this lawsuit. Illinois law specifically prohibits the assignment of any annuity or any benefit, such as a right to civil enforcement or administrative review. This court finds that the language "or other benefit" under the Illinois Pension Code significant. A right to have a widow's annuity benefit reviewed to determine if and by how much it should be recalculated is a benefit that cannot be assigned pursuant to statute. The widow's potential increased amount would constitute a part of the annuity benefit to be received by the widow from the Firemen's Pension Fund. Any resulting increase would become a part of the annuity benefit of the widow. Construing the clear language of the statute, the assignment sections of the Illinois Pension Code and the Firemen's Pension Fund prohibit any assignment of any potential lawsuit to exercise the rights of the deceased annuitant that he/she did not pursue while alive.

¶ 25        The primary objective in construing a statute is to determine and give effect to the intent of the legislature. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. The court may consider the reason for the law, the problem sought to be remedied, the purpose to be achieved, and the consequences of construing the statute one way or another. *People v. Hunter*, 2013 IL 114100, ¶ 13.

¶ 26        Here, the section of the statute relating to assignment reads, in pertinent part, as follows:
        "Assignment. Except as provided in this Article, all moneys in the fund created by this Article, and all securities and other property of the System, and all annuities and other benefits payable under this Article, and all accumulated contributions and other credits of participants in this system, and the right of any person to receive an annuity or other benefit under this Article, or a refund or return of contributions, shall not be subject to judgment, execution, garnishment, attachment or other seizure by process, in bankruptcy or otherwise, nor to sale, pledge, mortgage or other alienation, and shall not be assignable." 40 ILCS 5/2-154 (West 2010).

¶ 27        This statutory language strongly indicates that the Illinois legislature's intent in creating

the state and municipal employee pension funds, of which the Firemen's Pension Fund is a part, was to prevent the annuitants from assigning their rights to the proceeds of the funds "or other benefit" under any circumstances, including the right to pursue possibly unpaid benefits.

¶ 28    Pamela Reynolds, the administrator of Doris Faust's estate, does not have the right to pursue any pension benefits that may have been owed to Doris Faust which Doris Faust never pursued, collect those funds and assign them to the estate she represents. Put another way, Pamela Reynolds did not create a valid cause of action when she pursued this cause of action after Doris Faust's death and alleged that Doris Faust may have had additional rights to funds from the Firemen's Pension Fund, then self-assign decedent Doris Faust's right to pursue those benefits to herself as administrator of the estate and file a cause of action to recoup any unpaid pension benefits for the benefit of the heirs of decedent's estate.

¶ 29    Furthermore, pursuant to statute, a civil enforcement action against the Firemen's Pension Fund may only be brought by "a participant, beneficiary or fiduciary" as those terms are defined in the statute. 40 ILCS 5/1-115 (West 2010). The participant in the fund, Harry Faust, died in 1977. Pamela Reynolds and Michael Faust, the two now-adult children from the marriage of Harry and Doris Faust, have long since ceased to be beneficiaries under the Firemen's Pension Fund when they reached their majority. 40 ILCS 5/2-121.1 (West 2010). The other four adult children who are members of Doris Faust's estate were not fathered by the participant Harry Faust and were never beneficiaries of the fund. Any right to pursue a cause of action was finally extinguished when the sole remaining beneficiary and widow, Doris Faust, died in 2009. Pamela Reynolds is not, nor does she allege in the instant complaint that she is, a fiduciary of the pension fund. 40 ILCS 5/1-101.1 (West 2010) (fiduciary defined). In fact, Pamela Reynolds does not allege in her civil enforcement complaint that she falls into the category of "participant, beneficiary or fiduciary," the only three categories of people who are statutorily allowed to file a civil enforcement action besides the Illinois Attorney General. 40 ILCS 5/1-115 (West 2010). This dooms her cause of action.

¶ 30    Plaintiff cites a Rule 23 unpublished order of this court for the proposition that the prospect for possible unpaid increases in widow's benefits survive the widow's death and can be pursued by the decedent's estate. *Barry v. Retirement Board of the Firemen's Annuity & Benefit Fund*, Nos. 1-06-3036, 1-07-0730 cons. (2009) (unpublished order under Supreme Court Rule 23). The Rule 23 order, even if it had precedential value, does not support plaintiff's theory. The plaintiff, Barry, filed her claim for increased pension benefits due her pursuant to the *Bertucci* decision (*Bertucci v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 351 Ill. App. 3d 368 (2004)) while she was alive. The circuit court determined that plaintiff was entitled to the increased section 6-140 benefits paid retroactively from the date of her husband's death, plus prejudgment and postjudgment interest, and costs. The Board appealed this judgment. During the pendency of the appeal, plaintiff died. The appellate court remanded the matter to the Board to conduct an evidentiary hearing to determine whether plaintiff's husband had been permanently injured as required by the holding in *Bertucci*, 351 Ill. App. 3d at 372-73. *Barry v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 357 Ill. App. 3d 749, 766 (2005). On remand, the Board conducted

an evidentiary hearing in December of 2005. In March of 2006, the Board denied Barry's request for increased section 6-140 benefits, claiming that the annuity did not survive upon her death, could not be assigned, and abated upon her death. *Barry v. Retirement Board of the Firemen's Annuity & Benefit Fund*, Nos. 1-06-3036, 1-07-0730 cons., order at 6 (2009) (unpublished order under Supreme Court Rule 23). Barry filed a motion in circuit court to enforce the appellate court's 2005 decision. The circuit court granted the Board's motion to dismiss because plaintiff had died and her son lacked standing to sue. *Id*. at 7. On appeal of that order, this court noted that "if a party dies while a matter is pending on appeal, Supreme Court Rule 366(a)(2) governs and provides, in pertinent part, that in 'all appeals the reviewing court may, in its discretion, and on such terms as it deems just, *** allow substitution of parties by reason of *** death *** on such reasonable notice as it may require.' 155 Ill. 2d R. 366(a)(2)." *Id*. at 10. This court then appointed plaintiff's son as heir and executor of plaintiff's estate, "as special representative in substitution for the deceased." *Id*. at 12. This court then rejected the Board's arguments that we lacked subject matter jurisdiction and we declined to dismiss the appeal.

¶ 31     Doris Faust, in the instant case, never filed a claim in her lifetime for the increased pension benefits which her estate now seeks. Barry received a circuit court judgment in her favor while she was alive. Therefore, Barry's claim was no longer merely a possible pension benefit that could not be assigned; it became a judicial reality via the judgment that was entered in her favor. Judgments entered in favor of litigants while they are alive survive their death. In Illinois, as in most states, judgments are assignable. *Northwest Diversified, Inc. v. Desai*, 353 Ill. App. 3d 378 (2004); see generally 50 C.J.S. *Judgments* § 834, at 160 (2009). The *Barry* case was procedurally quite different from the instant case. No judgment was entered in favor of Doris Faust during her lifetime that could be assigned to her estate.

¶ 32     One of the most important public policy matters facing many state and municipal governments today is how to assure that individuals who have spent their worklife in public service will have adequate annuity income from funds not unlike the Firemen's Pension Fund to meet their needs and/or the needs of their widow(er) and children during their retirement years. This decision to enforce the legislation, as written, is consistent with the policy considerations that the funds established are fair, effective and, most importantly, remain financially sound and solvent in providing retirement income to retirees, their widows/widowers and orphans, as well. The adult children who make up the estate of Doris Faust, four of whom were not conceived during the marriage of Harry and Doris Faust, have no right to an assignment of any benefit Doris Faust potentially may have had during her lifetime to pursue any possible increase in her monthly annuity payments. Doris Faust was statutorily barred from assigning her right to pursue additional funds to others for their benefit during her lifetime. It follows that the administrator of the estate cannot self-assign this right to the estate after her death as it belonged solely to Doris Faust as an unassignable benefit which was extinguished forever upon Doris Faust's death.

¶ 33     Additionally, any statutory right to pursue a civil enforcement action or administrative review with the Board does not survive Doris Faust's death because the enabling statute does not provide for survival. See *Froehlich v. Matz*, 93 Ill. App. 3d 398, 410 (1981) (shareholder's action against promoter of unregistered securities pursuant to Securities Act

did not survive his death as the Securities Act contained no survival provision); *In re Application of Goldberg*, 32 Ill. Ct. Cl. 1068 (1979) (because Crime Victim's Compensatory Act was silent on survival of action, claimant's action terminated and abated upon death of claimant). The Illinois Survival Act allows a decedent's representative to maintain only certain prescribed causes of action (755 ILCS 5/27-6 (West 2010)), and this type of action is not one of them. Not only does the Firemen's Pension Fund not provide for either assignment or survival of the right or benefit of a widow/annuitant's representative to pursue an increase in annuity payments under a pension plan after the widow/annuitant's death, it is also not one of the rights listed in the Illinois Survival Act that survive after death. 755 ILCS 5/27-6 (West 2010).

¶ 34     Plaintiff argues that pension rights are in the nature of contract rights and therefore plaintiff's rights did not abate upon her death. Plaintiff makes this argument even though she never alleged a breach of contract action in her four-count complaint filed with the circuit court. Plaintiff cites *Thompson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 379 Ill. App. 3d 498 (2008), and *Bell v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 398 Ill. App. 3d 758 (2010), as support for this argument. However, the complaint in *Thompson* was filed by a participant who was alive throughout the litigation process. The complaint in *Bell* was brought by a beneficiary who was alive throughout the litigation process. Neither of these cases supports plaintiff's argument that the estate of a beneficiary may bring a civil enforcement action or a breach of contract claim against the Board.

¶ 35     C. Plaintiff's Claim that a Successor Circuit Court Judge is Prohibited From
Ruling on an Issue Ruled on by the Prior Circuit Court Judge

¶ 36     There were two separate circuit court judges who rendered decisions in the case below. The first judge ruled on defendant's first motion to dismiss and in an order dismissed the entire case except for plaintiff's request for administrative review. Although the Board argued the inability to assign Doris Faust's pension benefits to anyone pursuant to statute, the first judge made no ruling on that issue. Plaintiff argues that the first judge impliedly ruled on that issue when he denied the motion to dismiss as to her request for administrative review. The case was administratively reassigned to a second circuit court judge. When the Board raised the lack of statutory authority to assign pension benefits to anyone in a subsequent pleading before the second judge, that judge specifically ruled in favor of the Board and issued a memorandum opinion and order and dismissed the remaining portion of plaintiff's claim using his reasoning and analysis on that specific issue to do so. Plaintiff argues that the successor judge could not rule on the assignment issue because of the prior judge's denial by implication. Plaintiff essentially argues that the first circuit court judge's implied ruling became the law of the case that could not be overturned by a successor circuit court judge.

¶ 37     Our supreme court addressed this issue very recently holding:

"[W]here, as here, multiple judges and rulings are involved, we are mindful of precedent recognizing the circuit court's inherent power to review, modify, or vacate interlocutory

-9-

orders while the court retains jurisdiction over the entire controversy. For example, this court has repeatedly held that the circuit court has the inherent power to modify or vacate an interlocutory order granting summary judgment any time before final judgment. *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 213-14 (1988). 'In a variety of contexts, this court has stated that an interlocutory order may be reviewed, modified or vacated at any time before final judgment, and it is of no consequence that the original order was entered by another circuit judge.' *Balciunas v. Duff*, 94 Ill. 2d 176, 185 (1983)." *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 42.

¶ 38 We hold that it was within the successor circuit court judge's province to rule on the abatement and assignment issue in this case.

¶ 39 D. Plaintiff's Claim That Notice to Doris Faust of a Possibility of an Increase in Her Pension Was Defective

¶ 40 The plaintiff complains that the 2005 procedure the Board utilized to implement the *Bertucci* opinion was lacking. Plaintiff argues that the Board was obligated to unilaterally recalculate Doris Faust's widow's pension without requiring that she submit an application following the notice that she may be entitled to increased benefits and without a hearing before the Board to determine if she could meet her burden of proof as required in the notice sent to her in August 2005. Even if we were to rule that an assignment of the decedent's beneficial interest of past benefits can occur, which we do not, this court is loathe to judicially usurp and create an administrative procedure for the Board to follow in carrying out its fiduciary duties. It appears that the administrative procedure established by the Board to implement *Bertucci* had a complete success rate in informing everyone who could be potentially affected, including the plaintiff. *Bell v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 398 Ill. App. 3d 758, 761 (2010).

¶ 41 Furthermore, there is no evidence in the record that the Board acted in any way other than a responsible manner. Its past dealings with Doris Faust highlight the Board's careful exercise of its fiduciary duties. Doris Faust's widow's annuity was statutorily terminated due to her remarriage in 1979. When the statute was amended almost 16 years later to allow remarried but divorced widows to reinstate their widow's annuity from their first spouse, and despite the lack of contact between Doris Faust and the Board for 16 years, the Board found Doris Faust and informed her of her new right to apply to receive reinstatement of her widow's annuity. Doris Faust applied and was reinstated as an annuitant.

¶ 42 Computations of annuities are highly individualized calculations. Review of medical records are just as individualized. As indicated by the notice that was sent to Doris Faust in August 2005, both financial and medical reviews by the Board were necessary for a determination in this case. The fact that the Board, in carrying out its fiduciary duties owed to the entire fund participants and beneficiaries, wished to adjudicate each potential beneficiary of the *Bertucci* decision individually and give each person notice and an opportunity to be heard on the matter is not so out of line as to require judicial intervention. Clearly, the increase in widows' annuities were not automatic. The potential beneficiaries of the *Bertucci* decision had sufficient procedural safeguards, especially when balanced with

the duties of the Board to see that any financial calculations, medical reviews and other administrative spadework to be performed by the pension fund administrators are done accurately and in conformity not only with *Bertucci*, but with the other sections of the Pension Code as they are applied to each individual and their individual circumstances.

¶ 43    The plaintiff's request that we hold the Board's procedures were defective is without merit. Given that the annuitant has been deceased since 2009, it would be impossible to show impending harm sufficient for this court to judicially intervene and to provide equitable relief. However, given our holding regarding the nonassignability of decedent's pension benefits, the plaintiff-administrator of decedent's estate, as a nonparticipant, nonbeneficiary and nonfiduciary in the pension fund has no recourse with either the Board or the courts on the matter of whether Doris Faust received all the pension benefits she was entitled to during her lifetime, including whether notice and an opportunity to be heard were proper.

¶ 44    It is the duty of the Board members to ensure that public employee-retirees and their dependents are the actual recipients of retirement income. To allow the heirs of an annuitant's estate to sue the Board would be tantamount to declaring that the heirs have some surviving property interest in the decedent's annuity. Doris Faust could neither assign her widow's annuity nor could she have made a testamentary transfer of her widow's annuity to anyone. Four of her adult children were never covered under the pension annuity as beneficiaries. We cannot judicially allow for lawsuits such as the instant case where the Illinois statute does not allow it, especially where there is a certainty that any funds that may be recovered from the Firemen's Pension Fund would be diverted to support unrelated strangers to the original participant/fireman, Harry Faust.

¶ 45    Our conclusion here today is a simple one–the adult children of Doris Faust have no cognizable claim under the Firemen's Pension Fund to share in any of Doris Faust's retirement benefits. They are not participants, beneficiaries or fiduciaries as defined by statute.

¶ 46    Our decision today is consistent with the concerns and principles expressed by the United States Supreme Court in *Boggs v. Boggs*, 520 U.S. 833 (1997), when it did not allow the testamentary transfer of a wife's interest in her survivor's annuity to her sons. While our case involves the estate administrator's attempted assignment of a spouse's potential, unawarded, partial interest in a widow's annuity after the annuitant's death to all surviving heirs with this lawsuit to recover that potential interest for their benefit, the concerns to protect the Firemen's Pension Fund to ensure there will always be a stream of income for surviving spouses and beneficiaries are the same.

¶ 47                                        IV. CONCLUSION

¶ 48    For the forgoing reasons, the judgment of the circuit court is affirmed.

¶ 49    Affirmed.