# Illinois Official Reports

## Appellate Court

*Hooker v. Retirement Board of the Fireman's Annuity & Benefit Fund*,
2014 IL App (1st) 131568

| | |
|---|---|
| Appellate Court Caption | DANIEL HOOKER, as Special Representative and Heir, Individually and on Behalf of All Other Persons Similarly Situated, Plaintiffs-Appellants, v. THE RETIREMENT BOARD OF THE FIREMAN'S ANNUITY AND BENEFIT FUND OF CHICAGO, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-1568 |
| Filed | May 22, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute concerning the retirement benefits due to the widow and estate of a fireman who was injured in the line of duty, the trial court properly dismissed the claim of the estate of the fireman's deceased widow to an increase in her annuity based on a salary increase for firemen that was included in a collective bargaining agreement that was ratified several months after the widow's death, since the estate's claim was untimely filed more than 35 days after the Retirement Board gave notice that the final payment to the widow had been made, and the widow's death abated any claim by her heirs for retroactive reimbursement of the widow's survivor benefits based on the new collective bargaining agreement. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-21995; the Hon. Mary Anne Mason, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Martin O. Holland, of Evergreen Park, for appellant.

Mary Patricia Burns, Vincent D. Pinelli, and Larisa L. Elizondo, all of
Burke, Burns & Pinelli, Ltd., of Chicago, for appellee.

Panel

JUSTICE FITZGERALD SMITH delivered the judgment of the
court, with opinion.
Presiding Justice Howse and Justice Lavin concurred in the judgment
and opinion.

**OPINION**

¶ 1        In this case we are asked to determine whether a cause of action against the defendant, the Retirement Board of the Fireman's Annuity & Benefit Fund of Chicago (hereinafter the Board), may be brought by an estate of a deceased former recipient of an annuity paid pursuant to the Illinois Pension Code (Pension Code) (40 ILCS 5/6-101 *et seq.* (West 2008)) to benefit the estate's heirs. We hold today that it may not and therefore affirm the judgment of the circuit court.

¶ 2                                      I. BACKGROUND

¶ 3        The facts and procedural history of this cause are complex and reveal the following. Michael Hooker (hereinafter Michael) was employed by the Chicago fire department from April 1, 1967, to July 13, 1989. Michael was married to Elaine Hooker (hereinafter Elaine). In 1989, Michael suffered a debilitating duty-related injury. He was subsequently awarded a duty disability benefit by the Board pursuant to section 6-151 of the Pension Code (40 ILCS 5/6-151 (West 2000)). Michael died on December 6, 2000. Elaine then applied to the Board for benefits and was awarded an ordinary widow's pension (*i.e.*, minimum annuity) pursuant to section 6-141.1 of the Pension Code (40 ILCS 5/6-141.1 (West 2000)).

¶ 4        Elaine believed that pursuant to section 6-140 of the Pension Code, she was entitled to a higher annuity for widows of firemen who died in the line of duty (40 ILCS 5/6-140 (West 2000)). She therefore filed a complaint in the circuit court on February 5, 2003, requesting administrative review of the Board's decision. Relying on *Bertucci v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 351 Ill. App. 3d 368 (2004), on June 2, 2005, the circuit court found that because Michael's duty-related injury was permanent and prevented him from ever returning to active duty, Elaine was entitled to section 6-140(a) annuity benefits (*i.e.*, 75% rather than 50% of her husband's salary). See 40 ILCS 5/6-140 (West 2000). The court ordered the Board to award the line-of duty death benefits prescribed by section 6-140(a) (40 ILCS 5/6-140 (West 2000)) and remanded the cause to the Board for a

calculation of those benefits. On January 18, 2006, the Board awarded Elaine section 6-140(a) benefits retroactive to the date of the *Bertucci* decision.

¶ 5 On August 28, 2006, Elaine filed a motion to amend her February 5, 2003, complaint. In September 2006, the circuit court granted Elaine leave to file a three-count amended complaint. In count I of her complaint, Elaine sought administrative review of the Board's decision on remand, alleging that she was entitled to benefits retroactive to the date of her husband's death, rather than the date of the *Bertucci* decision. Count II sought certification of the class of all widows similarly situated to Elaine. In count III, Elaine raised a new issue, alleging that the calculation of her widow's annuity pursuant to section 6-140(a) (40 ILCS 5/6-140(a) (West 2000)) had to include a type of fireman's compensation known as duty availability pay (hereinafter DAP). Elaine acknowledged that DAP was not in existence at the time her husband worked as a fireman and that her husband did not receive such compensation while employed by the Chicago fire department. She nevertheless argued that the Board was required to include DAP in the calculation of the annuities which she had received pursuant to section 6-140(a) of the Pension Code (40 ILCS 5/6-140(a) (West 2000)). Count III also sought certification of the class of all widows who were receiving section 6-140(a) annuities but had not had DAP included in the determination of their benefits.

¶ 6 The circuit court stayed proceedings on Elaine's amended complaint. Thereafter, on December 20, 2007, the circuit court vacated the Board's decision from the original order on remand, and directed the Board to pay Elaine benefits retroactive to the date of Michael's death, rather than as the Board had done to the *Bertucci* decision. The Board appealed the circuit court's decision but the appellate court affirmed the circuit court's order. See *Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 391 Ill. App. 3d 129 (2009) (*Hooker I*). On April 28, 2009, the Board complied with the appellate court's decision and awarded Elaine benefits retroactive to the death of her husband, as well as prejudgment and postjudgment interest.

¶ 7 Proceedings then went forward on Elaine's amended complaint. On May 26, 2010, the circuit court dismissed counts I and II of Elaine's claim as moot. The court held that because Elaine had been paid benefits retroactive to the date of Michael's death, as well as interest, that count I of her complaint had been fully resolved. As to the requested class certification in count II, the court held that because the claim had been resolved in Elaine's favor, she was no longer the proper party to adequately protect the interests of the class she purported to represent, and the class action had to be dismissed.

¶ 8 Elaine died on September 20, 2010. The record is unclear, but it appears that at this point in the proceedings, Elaine's son, and heir, Daniel Hooker, the plaintiff in the cause at bar, was substituted as special representative, and the case proceeded solely on count III of Elaine's amended complaint. The parties filed cross-motions for summary judgment. Following a hearing, on May 25, 2011, the court denied Elaine's motion for summary judgment and granted the motion in favor of the Board concluding that Elaine was not entitled to have her widow's annuity adjusted for DAP. The court also declined to certify the class of potential widows with the same DAP claim.

¶ 9 On September 15, 2011, the plaintiff appealed the circuit court's decision as to count III. On May 9, 2012, this appellate court reversed the circuit court's decision, finding that pursuant to section 6-111(i) of the Pension Code (40 ILCS 5/6-111(i) (West 2008)), the Board was required to include the DAP in the calculation of Elaine's section 6-140(a)

- 3 -

widow's annuity (40 ILCS 5/6-140(a) (West 2008)), even if the DAP had never been received by her husband while working as a Chicago fireman. See *Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2012 IL App (1st) 111625, ¶¶ 13-21 (*Hooker II*). This appellate court also concluded that class certification was appropriate. *Hooker II*, 2012 IL App (1st) 111625, ¶¶ 23-33.

¶ 10    In addition, shortly after Elaine's death, on November 29, 2010, the Board sent one of Elaine's heirs, Walter Hooker, a letter and a check for $4,003, representing the last *pro rata* annuity due to Elaine before her death. In its letter, the Board notified the heir that this was the Board's final payment and that if he wished to dispute this final payment, he had 35 days within which to seek administrative review.

¶ 11    Thereafter, on February 9, 2011, the Chicago city council ratified a new collective bargaining agreement between the City of Chicago and the Chicago Fire Fighters Union, Local No. 2, according certain salary increases to firefighters retroactive to July 1, 2007. Consequently, on August 10, 2011, the plaintiff sent a letter to the Board demanding that the Board pay the heirs of Elaine's estate retroactive widow annuity benefits based upon the new collective bargaining agreement.

¶ 12    While the *Hooker II* appeal was pending, on September 23, 2011, the Board responded to plaintiff's letter, stating that the annuity to a widow is a lifetime benefit that abates at death and that, therefore, Elaine's heirs were without legal recourse as to the retroactive salary increases in the February 2011 collective bargaining agreement. On November 22, 2011, the Board reiterated its position in a letter issued to Elaine's heir, Walter Hooker, stating that it did not owe Elaine's estate any retroactive annuity benefits.

¶ 13    In response, the plaintiff filed a motion with the appellate court asking that as part of the pending *Hooker II* appeal the court also decide whether Elaine's death abated her entitlement to section 6-140 benefits (40 ILCS 5/6-140 (West 2008)). In that motion, the plaintiff contended that this issue was central to the appeal because the Board had essentially advised the plaintiff that even if successful in its appeal for retroactive DAP benefits, the Board would deny those benefits to the heirs of the estate because Elaine died on September 10, 2010. The plaintiff urged the court to decide this issue so as to avoid any future piecemeal litigation. The appellate court granted the plaintiff's motion and took the motion "as part of the case on appeal." However, in deciding *Hooker II*, the court then entirely skirted the abatement issue and instead addressed the merits of the DAP adjustment claim. In explaining its reasons for not addressing abatement, the court stated in full:

> "Elaine died on September 20, 2010. Elaine's attorney asks us to decide whether her death abates her entitlement to section 6-140 retroactive benefits. The Board contends that we lack jurisdiction to decide the issue because the trial court never considered the issue. [Citation.]
>
> '[A] reviewing court has a duty to consider its jurisdiction *sua sponte*.' [Citation.] This court lacks jurisdiction to decide an appeal if the parties no longer face an actual controversy, as when events make it impossible for this court to render effective relief to the appealing party. [Citation.] This court has jurisdiction to consider whether Elaine's death makes her appeal moot. However, neither party has suggested that her death moots the appeal, and we see no reason to believe that her death would make her appeal moot. We will not extend our review of our jurisdiction to review an issue that the trial court never addressed, where the issue does not appear to moot the

appeal, and where neither party argues that the issue moots the appeal. If the Board fails to pay Elaine's estate the benefits it withheld from Elaine while she lived, the statutory process for challenging the Board's refusal to pay benefits it owes should suffice." *Hooker II*, 2012 IL App (1st) 111625, ¶¶ 35-36.

¶ 14    After our appellate court decided *Hooker II*, on June 14, 2012, without addressing the abatement issue, the plaintiff filed the instant two-count complaint in the circuit court seeking: (1) administrative review of the Board's November 22, 2011, letter, denying retroactive annuity benefits to Elaine's heirs pursuant to the February 2011 collective bargaining agreement; and (2) declaratory judgment regarding the plaintiff's entitlement to widow's benefits accruing pursuant to the February 2011 collective bargaining agreement, as well as the certification of a class of similarly situated estates. The Board filed a motion to dismiss pursuant to section 2-619.1 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2008)), arguing, *inter alia*, that: (1) the heirs of Elaine's estate had no standing to bring an action for retroactive annuity payments, since any benefits owed to Elaine abated at her death; (2) the circuit court was without subject matter jurisdiction to consider the plaintiff's request for administrative review since the cause of action was not filed within the 35-day filing limitation mandated under the Illinois Administrative Review Law (735 ILCS 5/3-102 (West 2008)); and (3) certification of the class action was improper.

¶ 15    After hearing arguments by the parties, on April 25, 2013, the circuit court granted the Board's motion to dismiss. The court found that count I of the plaintiff's claim seeking administrative review of the Board's November 22, 2011, letter was not properly before the court pursuant to the Administrative Review Law (735 ILCS 5/3-102 (West 2008)) since the Board never made an adjudicative decision after an administrative hearing and there was no administrative record for the court to review. As to count II, the declaratory judgment action, the court found that Elaine's heirs were not entitled to any retroactive benefits pursuant to the collective bargaining agreement that was entered into by the firefighter's union after Elaine's death. Accordingly, the court held that class certification of any similarly situated heirs was also inappropriate. In doing so, the court explained:

> "[A]t the time of her death, Elaine Hooker had no claim based on the terms of the later-ratified [collective bargaining agreement.] Despite the fact that the [collective bargaining agreement] accorded retroactive benefits to firefighters, which benefits translate into higher pension payouts to survivors, Elaine Hooker's entitlement to survivor's benefits abated at her death. [Citation.] As a matter of law, the [collective bargaining agreement] ratified in February 2011 cannot give rise to a claim for benefits that did not exist as of the date of Elaine Hookers' death."

The plaintiff appealed the circuit court's decision on October 13, 2013.

¶ 16    In the meantime, the Board appealed the *Hooker II* decision to our supreme court. On December 19, 2013, our supreme court reversed the judgment of the appellate court in *Hooker II*, finding that the calculation of duty death annuity benefits awarded to city firefighters' widows, like Elaine, should not include DAP, where the firefighters had not received the DAP benefit while working as firemen. *Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL 114811, ¶¶ 16-24 (*Hooker III*). The court also found that because the plaintiff did not have a valid cause of action under count I, it "necessarily follow[ed] that class certification [was] inappropriate." *Hooker III*, 2013 IL 114811, ¶ 24. In addition, the court declined the plaintiff's invitation on cross-appeal to

address for the first time whether the February 2011 collective bargaining agreement between the City of Chicago and the firefighter's union was to be applied to the final determination of Elaine's benefits, even though that agreement was not ratified until after her death. *Hooker III*, 2013 IL 114811, ¶ 27. The court explained that this cause of action was pending in a separate lawsuit before this appellate court and, therefore, declined to address the issue before we did. See *Hooker III*, 2013 IL 114811, ¶ 27.

¶ 17　　Accordingly, we must now determine whether Elaine's entitlement to any survivor's benefits under the February 2011 collective bargaining agreement abated at her death.

¶ 18　　　　　　　　　　　　　　　II. ANALYSIS

¶ 19　　Before we begin our analysis, however, we must first resolve two threshold issues: the applicable standard of review and the court's subject matter jurisdiction over the plaintiff's claim. We begin with the standard of review.

¶ 20　　　　　　　　　　　　　A. Standard of Review

¶ 21　　On appeal, the parties dispute the standard of review, with the Board arguing that the standard is clearly erroneous, and the plaintiff seeking *de novo* review. Contrary to the Board's contention, as shall be more fully elaborated below, in the instant case, we are not reviewing an administrative proceeding so as to trigger the clearly erroneous standard of review. Rather, we are asked to evaluate the circuit court's grant of the Board's combined section 2-619.1 motion to dismiss (735 ILCS 5/2-619.1 (West 2008)) on the basis of: (1) the circuit court's lack of subject matter jurisdiction; and (2) the proper interpretation of the Pension Code (40 ILCS 5/6-140 (West 2008)) as to defining whether a survivor spouse's annuity benefits abate at that spouse's death. It is well established that "the standard of review this court applies when reviewing a circuit court's dismissal of a complaint is de *novo*." *Reynolds v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL App (1st) 120052, ¶ 21. In reviewing the grant or denial of a motion to dismiss, we view the allegations in the plaintiff's complaint in the light most favorable to the plaintiff. *Beahringer v. Page*, 204 Ill. 2d 363, 369 (2003). Where it appears from the record that no set of facts could be proven which would entitle the plaintiff to relief, dismissal must be affirmed. *Beahringer*, 204 Ill. 2d at 369. In the present case, the material facts are not in dispute, and the resolution of the case depends purely on the legal question of the proper interpretation of the statutory provisions governing subject matter jurisdiction pursuant to the Administrative Review Law (735 ILCS 5/3-102 (West 2008)), as well as those governing annuity benefits for widows of firefighters under the Pension Code (40 ILCS 5/6-140 (West 2008)). Accordingly, *de novo* review is appropriate. See *Beahringer*, 204 Ill. 2d at 369; *Reynolds*, 2013 IL App (1st) 120052, ¶ 21.

¶ 22　　　　　　　　　　　B. Subject Matter Jurisdiction

¶ 23　　We next address the circuit court's subject matter jurisdiction to address the plaintiff's claim. Below, the plaintiff attempted to have the circuit court consider the abatement issue both: (1) by seeking administrative review of the Board's November 22, 2011, letter and (2) by seeking a declaratory judgment that under the Pension Code the heirs of Elaine's estate, and all similarly situated plaintiffs, were entitled to retroactive benefits under the February

2011 collective bargaining agreement adjusting the firefighter's salaries retroactively to July 2007. The circuit court, however, found that it was without subject matter jurisdiction to consider the plaintiff's administrative review action and proceeded solely on the declaratory judgment action. For the reasons that follow, we agree with the circuit court's reasoning.

¶ 24 The Administrative Review Law (735 ILCS 5/3-102 (West 2008)) confers subject matter jurisdiction on the circuit court only if the plaintiff follows the procedures in that statute for seeking judicial review. Section 3-102 of the Administrative Review Law (735 ILCS 5/3-102 (West 2008)) explicitly provides:

> "Unless review is sought of an administrative decision within the time and in the manner herein provided, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such administrative decision."

Our supreme court has interpreted this passage as withholding subject matter jurisdiction from a circuit court unless "the statutorily prescribed procedures are *** strictly followed." *Rodriguez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 350 (2006). See also *Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202, 210-11 (1985).

¶ 25 Relevant to this appeal, section 3-103 of the Administrative Review Law mandates that any party seeking review of an administrative agency's final decision file a complaint and issue a summons within 35 days from the date that the final administrative decision is served on him or her. See 735 ILCS 5/3-103 (West 2008). Our supreme court has repeatedly held that this requirement to timely file the complaint within 35 days following notice of the Board's decision is purely jurisdictional and must be adhered to without exception regardless of the harsh effects resulting from its application. See *Fredman Brothers Furniture Co.*, 109 Ill. 2d at 210-11; see also *Rodriguez*, 218 Ill. 2d at 350; see also, *e.g.*, *West-Howard v. Department of Children & Family Services*, 2013 IL App (4th) 120782, ¶ 23; *Russell v. Board of Education of the City of Chicago*, 379 Ill. App. 3d 38, 44 (2007). Our supreme court has explained the rationale behind this rule:

> "Subject matter jurisdiction is conferred on courts by the Constitution or by legislative enactment. [Citation.] Article VI, section 9, of the 1970 Constitution provides: 'Circuit Courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction ***. Circuit Courts shall have such power to review administrative action as provided by law.' [Citation.] This court has held that when a court is in the exercise of special statutory jurisdiction, that jurisdiction is limited to the language of the act conferring it and the court has no powers from any other source. [Citation.] In the exercise of special statutory jurisdiction, if the mode of procedure prescribed by statute is not strictly pursued, no jurisdiction is conferred on the circuit court. [Citations.]

> The Administrative Review Act was 'an innovation and departure from the common law, [and] the procedures it establishes must be pursued ***.' [Citation.] Section 2 of the Act specifically provides that any other mode of review heretofore available shall not be employed. Section 2 also provides that unless review is sought of an administrative decision within the time and in the manner provided therein, the parties to the proceeding before the administrative agency shall be barred from obtaining a judicial review. [Citation.]

*** The provisions of that [Administrative Review Law] *** demonstrate that the filing of the complaint for administrative review within the time period specified is a jurisdictional requirement and that judicial review of the administrative decision is barred if the complaint is not filed within the time specified." (Emphases omitted.) *Fredman Brothers Furniture Co.*, 109 Ill. 2d at 210-11.

Accordingly, if a "complaint is not timely filed, no jurisdiction is conferred on the circuit court and judicial review of the administrative order is barred." *Collinsville Community Unit School District No. 10 v. Regional Board of School Trustees*, 218 Ill. 2d 175, 182 (2006); see also *Nudell v. Forest Preserve District*, 207 Ill. 2d 409, 423 (2003).

¶ 26 In the present case, it is undisputed that the Board sent a letter to Walter Hooker, an heir of Elaine's estate on November 29, 2010, informing him: (1) that the enclosed check was the final payment of Elaine's *pro rata* benefit pursuant to the Pension Code; and (2) that if the heir wished to dispute the payment, he must file for administrative review within 35 days. It is further undisputed that the Board issued a second letter to Walter Hooker on November 22, 2011, stating that Elaine's estate was not entitled to any increase in benefits under the February 2011 collective bargaining agreement because the annuities are payable only during the life of the annuitant and Elaine died prior to the ratification of that collective bargaining agreement. It is from this second letter, which he coins "the final administrative decision," that the plaintiff seeks administrative review. Even though, just as the circuit court, we are not convinced that this second letter can be characterized as the Board's "final administrative decision," taking, as we must, the plaintiff's well-pleaded allegations as true, we nevertheless find that the circuit court was without subject matter jurisdiction to consider the plaintiff's claim, since that claim was filed way outside of the statutorily mandated 35 days. The record uncontrovertibly demonstrates that the plaintiff filed his claim for "administrative review" of the Board's decision, on June 14, 2012, exactly 205 days after the Board issued its second letter. See *Collinsville Community Unit School District No. 10*, 218 Ill. 2d at 182; see also *Nudell*, 207 Ill. 2d at 423. Accordingly, we find that dismissal of count I of the plaintiff's claim by the circuit court, and its decision to proceed with the abatement question solely on the declaratory judgment action was proper. See 735 ILCS 5/2-619(a)(1) (West 2010) (permitting a circuit court to dismiss a complaint if the court lacks subject matter jurisdiction).

¶ 27                                C. Abatement

¶ 28 Having disposed of the two threshold concerns we must now discuss the merits of the plaintiff's central contention on appeal, namely, whether a cause of action against the Board may be brought by an estate of a deceased former recipient of an annuity paid pursuant to the Pension Code to benefit the estate's heirs. On appeal, the plaintiff wishes us to declare that Elaine's heirs have a right to the retroactive reimbursement of Elaine's survivor benefits, as adjusted by the February 2011 collective bargaining agreement, because Elaine's right to calculate those benefits did not abate at her death. The Board disagrees, contending that Elaine's death abated any cause of action that could be raised by Elaine's heirs as to her benefits, since neither the Pension Code (40 ILCS 5/6-140 (West 2008)), the Illinois Survival Act (Survival Act) (755 ILCS 5/27-6 (West 2008)), nor the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2008)) provides for the survival of such actions. For the reasons that follow, we agree with the Board.

¶ 29    In *Reynolds*, 2013 IL App (1st) 120052, a case similar to the cause at bar, this appellate court was already asked once to determine whether an administrator of an estate of a former, deceased recipient of an annuity paid pursuant to the firemen's pension fund could institute a cause of action against the Board on behalf of the estate to benefit the estate's heirs and found that it could not. Just as here, in that case, the administrator of the estate of a decedent who was receiving a firefighter's widow's annuity at the time of her death brought an action against the Board alleging that the widow would have been entitled to receive higher duty death annuity benefits and seeking to recover for the estate additional payments that the widow would have been entitled to receive but did not receive during her lifetime. *Reynolds*, 2013 IL App (1st) 120052, ¶ 2. The circuit court rejected the administrator's complaint and ruled that any rights of the widow abated when she died. *Reynolds*, 2013 IL App (1st) 120052, ¶ 15. The administrator then appealed the issue to the appellate court. *Reynolds*, 2013 IL App (1st) 120052, ¶ 14.

¶ 30    In affirming the decision of the circuit court, we held that the right to have a widow's annuity benefit recalculated by the Board to obtain higher annuity payments was an unassignable benefit that did not survive the widow's death. *Reynolds*, 2013 IL App (1st) 120052, ¶¶ 23-34. In doing so, we first explained that the Pension Code explicitly prohibits the assignment by any pensioner or annuitant of any benefit under the Code. See *Reynolds*, 2013 IL App (1st) 120052, ¶ 24. In doing so, we primarily relied on the plain language of sections 2-154 and 6-213 of the Pension Code (40 ILCS 5/2-154, 6-213 (West 2010)). Section 2-154 states in pertinent part:

> "Assignment. Except as provided in this Article, all moneys in the fund created by this Article, and all securities and other property of the System, and all annuities and other benefits payable under this Article, and all accumulated contributions and other credits of participants in this system, and the right of any person to receive an annuity or other benefit under this Article, or a refund or return of contributions, shall not be subject to judgment, execution, garnishment, attachment or other seizure by process, in bankruptcy or otherwise, nor to sale, pledge, mortgage or other alienation, and shall not be assignable." 40 ILCS 5/2-154 (West 2010).

Similarly, section 6-213 of the Pension Code mandates that "[n]o pensioner, annuitant, applicant for a refund, disability beneficiary or other beneficiary has a right to transfer or assign his or her pension, annuity, refund or disability benefit or any part thereof." 40 ILCS 5/6-213 (West 2010). We held that the aforementioned language "strongly indicates" the legislature's intent to prevent the annuitants from assigning their rights to the proceeds of the funds "under any circumstances, including the right to pursue possibly unpaid benefits." *Reynolds*, 2013 IL App (1st) 120052, ¶ 27.

¶ 31    In that respect, we also noted that any statutory right to pursue a civil enforcement action or administrative review with the Board did not survive the widow's death because the Pension Code (*i.e.*, the enabling statute) nowhere provides for the survival of such an action. See *Reynolds*, 2013 IL App (1st) 120052, ¶ 33 (citing *Froehlich v. Matz*, 93 Ill. App. 3d 398, 410 (1981) (holding that shareholder's action against promoter of unregistered securities pursuant to Securities Act did not survive his death as the Securities Act contained no survival provision), and *In re Application of Goldberg*, 32 Ill. Ct. Cl. 1068 (1979) (holding that because crime victim's compensatory act was silent on survival of action, claimant's action terminated and abated upon death of claimant)).

¶ 32    In addition, we explained that the Survival Act (755 ILCS 5/27-6 (West 2010)), which explicitly authorizes the survival of certain specified claims that in the absence of the Survival Act would abate, does not list this type of action. *Reynolds*, 2013 IL App (1st) 120052, ¶ 33. The Survival Act prescribes the following causes of action as those that may be maintained by a decedent's representative, even if the enabling statute does not provide for survival:

> "In addition to the actions which survive by the common law, the following also survive: actions of replevin, actions to recover damages for an injury to the person (except slander and libel), actions to recover damages for an injury to real or personal property or *** against officers for misfeasance, malfeasance, nonfeasance of themselves or their deputies, actions for fraud or deceit, and actions provided in Section 6-21 of 'An Act relating to alcoholic liquors'." 755 ILCS 5/27-6 (West 2010).

¶ 33    Finally, in *Reynolds*, we noted several public policy concerns with permitting such a cause of action to proceed after the beneficiary's death. As we explained:

> "It is the duty of the Board members to ensure that public employee-retirees and their dependents are the actual recipients of retirement income. To allow the heirs of an annuitant's estate to sue the Board would be tantamount to declaring that the heirs have some surviving property interest in the decedent's annuity. [The widow] could neither assign her widow's annuity nor could she have made a testamentary transfer of her widow's annuity to anyone. *** We cannot judicially allow for lawsuits such as the instant case where the Illinois statute does not allow it, especially where there is a certainty that any funds that may be recovered from the Firemen's Pension Fund would be diverted to support unrelated strangers to the original participant/fireman ***." *Reynolds*, 2013 IL App (1st) 120052, ¶ 44.

We further elaborated:

> "One of the most important public policy matters facing many state and municipal governments today is how to assure that individuals who have spent their worklife in public service will have adequate annuity income from funds not unlike the Firemen's Pension Fund to meet their needs and/or the needs of their widow(er) and children during their retirement years. [Our] decision to enforce the legislation, as written, is consistent with the policy considerations that the funds established are fair, effective and, most importantly, remain financially sound and solvent in providing retirement income to retirees, their widows/widowers and orphans, as well." *Reynolds*, 2013 IL App (1st) 120052, ¶ 32.

Finally, we equated our concerns with those expressed by the United States Supreme Court in *Boggs v. Boggs*, 520 U.S. 833 (1997), which prohibited the testamentary transfer of a wife's interest in her survivor's annuity to her sons. *Reynolds*, 2013 IL App (1st) 120052, ¶ 46. As we stated:

> "While our case involves the estate administrator's attempted assignment of a spouse's potential, unawarded, partial interest in a widow's annuity after the annuitant's death to all surviving heirs with this lawsuit to recover that potential interest for their benefit, the concerns to protect the Firemen's Pension Fund to ensure there will always be a stream of income for surviving spouses and beneficiaries are the same." *Reynolds*, 2013 IL App (1st) 120052, ¶ 46.

- 10 -

¶ 34    We continued to adhere to the rationale expounded in *Reynolds*. Applying the holding of that decision to the facts of this case, we are therefore compelled to conclude that any right Elaine had to the retroactive salary increase per the February 2011 collective bargaining agreement abated at her death. In that respect, we reiterate that it is uncontroverted that Elaine died on September 20, 2010, five months before the February 2011 collective bargaining agreement was ratified. The record is clear that at no point in her lifetime did Elaine attempt to avail herself of the benefits under this collective bargaining agreement. She filed neither a request with the Board nor a complaint with the circuit court. Rather, this issue was raised for the first time by Elaine's heir and plaintiff on June 14, 2012, approximately 20 months after Elaine died and 18 months after the Board's issuance of the final annuity payment Elaine was entitled to during her lifetime to her other heir, Walter Hooker. Accordingly, under the principles articulated in *Reynolds*, the plaintiff's claim must fail. See *Reynolds*, 2013 IL App (1st) 120052, ¶ 44.

¶ 35    The plaintiff nevertheless urges us to consider the unpublished Rule 23 order in *Barry v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 391 Ill. App. 3d 1108 (2009) (table) (unpublished order under Supreme Court Rule 23), for the proposition that an unpaid increase in a widow's benefit may survive the widow's death and can be pursued by the decedent's estate. We first note that Illinois Supreme Court Rule 23(e) (eff. July 1, 2011) plainly provides that an appellate court's unpublished order "is not precedential and may not be cited by any party." See *Talamine v. Apartment Finders, Inc.*, 2013 IL App (1st) 121201, ¶ 3 ("A Rule 23 order is not precedential ***."). Nevertheless, even if the Rule 23 order cited by the plaintiff were precedential, we would find that order inapposite. Unlike in the present case, in *Barry*, the fireman's widow herself filed for an increase in her annuity, and the circuit court entered judgment in her favor while she was still alive. The court in *Barry* therefore held that the widow's claim was no longer a mere possible pension benefit that could not be assigned to her heirs, but rather a judicial reality via the judgment that was entered in her favor. See *Barry v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 391 Ill. App. 3d 1108 (2009) (table) (unpublished order under Supreme Court Rule 23). In the present case, Elaine never made a claim to the Board regarding retroactive increased annuity based upon the collective bargaining agreement; the circuit court was never presented with this issue, and no judgment was entered in favor of Elaine on this issue while she was still alive. Although other causes of action brought by Elaine were pending before the appellate and supreme courts, both courts refused to address this particular issue as improperly before them. Accordingly, *Barry* is inapposite.

¶ 36    Lastly, we reject the plaintiff's attempt to circumvent the impact of abatement, by arguing, for the first time on appeal, that his right to the retroactive payment of Elaine's benefits is, in fact, a contractual right protected by the Illinois Constitution. It is axiomatic that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal. *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 453 (2007). Accordingly, we find this argument waived.

¶ 37                                III. CONCLUSION

¶ 38    For the aforementioned reasons, we affirm the judgment of the circuit court.

¶ 39    Affirmed.