# Illinois Official Reports

## Supreme Court

***Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL 114811**

| | |
|---|---|
| Caption in Supreme Court: | DANIEL HOOKER *et al.*, Appellees, v. THE RETIREMENT BOARD OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO, Appellant. |
| Docket No. | 114811 |
| Filed | December 19, 2013 |
| Rehearing denied | January 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although firefighters' widows were entitled to pension increases based on current firefighters' salary increases, they were not statutorily entitled to increases based on "duty availability pay" which came into existence after their husbands' career-ending accidents. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Sebastian T. Patti, Judge, presiding. |
| Judgment | Appellate court judgment reversed in part and affirmed in part.<br>Circuit court judgment affirmed. |

Counsel on
Appeal

Mary Patricia Burns, Edward J. Burke, Vincent D. Pinelli and Madeleine S. Podesta, of Burke Burns & Pinelli, Ltd., of Chicago, for appellant.

Martin O. Holland, of Evergreen Park, for appellees.

Justices

JUSTICE BURKE delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Freeman, Thomas, and Karmeier concurred in the judgment and opinion.
Justice Theis dissented, with opinion, joined by Justice Kilbride.

## OPINION

¶ 1    Section 6-140(a) of the Illinois Pension Code (40 ILCS 5/6-140 (West 2008)) defines the terms of the annuity available to a widow of a fireman whose death was the result of a performance of an act of duty. The primary issue presented in this case is whether a form of fireman's compensation known as "duty availability pay" must be included in the calculation of that annuity, even if the fireman never received such compensation while working as a firefighter. The appellate court concluded that it must. 2012 IL App (1st) 111625. For the reasons that follow, we reverse.

¶ 2                                        Background

¶ 3    Plaintiffs Elaine Hooker and June Murphy were married to Chicago firefighters. Elaine's husband, Michael Hooker, joined the Chicago fire department in 1967. He suffered a duty-related injury and was awarded a duty disability benefit in 1989. Michael died in 2000. June's husband, James Murphy, joined the Chicago fire department in 1966. He also suffered a duty-related injury and was awarded a duty disability benefit in 1985. James died in 1998.

¶ 4    Following the deaths of their husbands, plaintiffs were both granted an ordinary widow's pension by the defendant, the Retirement Board of the Firemen's Annuity and Retirement Benefit Fund of Chicago (Board), pursuant to section 6-141.1 of the Pension Code (40 ILCS 5/6-141.1 (West 2008)). In February of 2003, plaintiffs filed a complaint for administrative review of that decision in the circuit court of Cook County.

¶ 5    In their complaint, plaintiffs alleged that they were entitled, under section 6-140(a) of the Pension Code (40 ILCS 5/6-140(a) (West 2008)), to the annuity which is awarded to the widow of a fireman who died in the line of duty. Relying on *Bertucci v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 351 Ill. App. 3d 368 (2004), the circuit court entered an agreed order that plaintiffs were entitled to the section 6-140(a) annuity because their

- 2 -

husbands' duty-related injuries were permanent and had prevented them from ever returning to active duty. The cause was then remanded to the Board for a calculation of benefits due to plaintiffs. The Board awarded plaintiffs section 6-140(a) benefits retroactive to the date of the *Bertucci* decision.

¶ 6 In September of 2006, the circuit court granted plaintiffs leave to file a three-count, first amended complaint. Count I of the complaint sought administrative review of the Board's decision on remand and alleged that plaintiffs were entitled to benefits retroactive to the date of their husbands' deaths, rather than the date of the *Bertucci* decision. Count II sought certification of the class of all widows similarly situated.

¶ 7 Count III raised a different matter. In this count, plaintiffs alleged that the calculation of their widow's annuity under section 6-140(a) had to include a type of fireman's compensation known as duty availability pay. Plaintiffs acknowledged that duty availability pay was not in existence at the time their husbands were firemen and that neither husband had received such compensation while employed by the Chicago fire department. Nevertheless, plaintiffs maintained that the Board was required to include duty availability pay in the calculation of the annuities which they received under section 6-140(a). Count III also sought certification of the class of all widows who were receiving section 6-140(a) annuities but had not had duty availability pay included in the determination of their benefits.

¶ 8 The circuit court stayed proceedings on plaintiffs' amended complaint. Thereafter, in December of 2007, the court vacated the Board's decision from the original order on remand, and directed the Board to pay plaintiffs benefits retroactive to the date of the death of each plaintiff's spouse. The Board appealed that decision and the appellate court affirmed. See *Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 391 Ill. App. 3d 129 (2009). The Board subsequently awarded benefits to plaintiffs retroactive to the deaths of their husbands, as well as prejudgment and postjudgment interest.

¶ 9 Proceedings then went forward on plaintiffs' amended complaint. Because plaintiffs had been paid benefits retroactive to the date of their husbands' deaths, as well as interest, the circuit court concluded that count I of plaintiffs' complaint had been fully resolved and was moot. The court therefore dismissed count I.

¶ 10 With respect to count II, the court noted that plaintiffs, the named representatives of the putative class, no longer had a valid cause of action. Citing to *Wheatley v. Board of Education of Township High School District 205*, 99 Ill. 2d 481 (1984), the court determined that, for this reason, dismissal was required. See *id.* at 486 (where the claims of the named representatives "have been resolved, they are not proper parties who would fairly and adequately protect the interest of the class they purport to represent").

¶ 11 On count III, the parties filed cross-motions for summary judgment. Following argument, the court denied plaintiffs' motion, granted the Board's motion, and declined to certify the class. Plaintiffs then appealed the grant of the Board's motion for summary judgment. The appellate court reversed. 2012 IL App (1st) 111625.

¶ 12 The appellate court concluded that under the language of section 6-111(i) of the Pension Code (40 ILCS 5/6-111(i) (West 2008)), the Board was required to include duty availability

pay in the calculation of an annuity awarded pursuant to section 6-140(a), even if duty availability pay was not received by the fireman. The appellate court also concluded that class certification was appropriate. The appellate court therefore reversed the judgment of the circuit court and remanded the cause to the circuit court for calculation of the appropriate award of annuities. We granted the Board's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 13                                     Analysis
¶ 14                              *The Board's Appeal*
¶ 15     Summary judgment may be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). The interpretation of a statute, such as the Pension Code, is a matter of law and thus presents a matter that is appropriate for summary judgment. *Village of Chatham, Illinois v. County of Sangamon, Illinois*, 216 Ill. 2d 402, 433 (2005). Issues of statutory interpretation and summary judgment rulings are reviewed *de novo*. *First American Bank Corp. v. Henry*, 239 Ill. 2d 511, 515 (2011).

¶ 16     Section 6-140 of the Pension Code defines the terms of the annuities received by plaintiffs. That provision states, in relevant part:

> "The annuity for the widow of a fireman whose death results from the performance of an act or acts of duty shall be an amount equal to 50% of the current annual salary attached to the classified position to which the fireman was certified at the time of his death and 75% thereof after December 31, 1972." 40 ILCS 5/6-140(a) (West 2008).

Under section 6-140(a), the annuity is calculated based on "the current annual salary attached to the classified position to which the fireman was certified at the time of his death." *Id*. This means that the amount of the annuity does not depend on the deceased fireman's actual salary at any time during his career. The amount of the annuity is instead "flexible, changing to reflect salary changes in the fire department." *Kozak v. Retirement Board of Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 215 (1983). Thus, for example, if the fire department increases the current pay for firemen at the position which the decedent had attained at the time of his death, the annuity under section 6-140 will increase, even though the decedent himself never received the increased pay.

¶ 17     Plaintiffs allege that, in addition to basing the annuity under section 6-140(a) on the salary attached to "the classified position to which the fireman was certified at the time of his death," the annuity must also be calculated using a type of compensation known as "duty availability pay." According to the parties, duty availability pay was created in the early 1990s pursuant to a collective-bargaining agreement between the firefighters' union and the City of Chicago. It is currently paid on a quarterly basis and is generally intended to compensate firefighters for being available for duty. For a number of years after it was created, duty availability pay was not included in the calculation of benefits under the Pension Code and, specifically, was not included in the Code's definition of "salary."

¶ 18    In 2004, the Pension Code's treatment of duty availability pay changed when section 6-111 of the Code was amended to provide as follows:

> "[T]he salary of a fireman *** shall include any duty availability pay received by the fireman *** and references in this Article to the salary attached to or appropriated for the permanent assigned position or classified career service rank, grade, or position of the fireman shall be deemed to include that duty availability pay." 40 ILCS 5/6-111(i) (West 2008).

Relying on this provision, plaintiffs maintain that duty availability pay must be included within the meaning of the word "salary" in section 6-140(a). Plaintiffs emphasize the word "deem" in section 6-111(i) and argue that "the statutory words 'deemed to include' specifically reject" the idea that duty availability pay must be received by the fireman in order to be included in the calculation of the annuity under section 6-140(a). Thus, according to plaintiffs, even though their husbands did not receive duty availability pay, and section 6-111(i) was not amended until after their deaths, duty availability pay must still be included in the calculation of their annuities. We disagree.

¶ 19    Plaintiffs fail to read section 6-111(i) in its entirety. Section 6-111(i) states that references to the salary attached to the position of a fireman "shall be deemed to include that duty availability pay." The word "that" refers back to the previous language of section 6-111(i) which states that "salary" includes duty availability pay that has been "received by the fireman." Thus, section 6-111(i) simply states that references elsewhere in the Pension Code to the word "salary" shall be treated as including duty availability pay received by the fireman.

¶ 20    The appellate court held that section 6-111(i) "clarifies" that references to the word "salary" must include duty availability pay even if such pay was never received by the fireman but the court provided no explanation as to why the phrase "that duty availability pay" should refer to anything other than "duty availability pay received by the fireman." Indeed, the appellate court effectively added language to the statute by reading section 6-111(i) as stating that the word "salary" shall include duty availability pay, "even if it was not received by the fireman." This is inappropriate. See, *e.g.*, *People v. Woodard*, 175 Ill. 2d 435, 443 (1997) ("the court is not free to depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express").

¶ 21    Further, we note that the appellate court's interpretation of section 6-111(i) can lead to anomalous results. Duty availability pay is a form of compensation but it is not salary. Unlike salary, which will always exist so long as there are firefighters, it is possible that duty availability pay may not be included in a particular collective-bargaining agreement. Should that be the case, and if we read section 6-111(i) as stating that the word "salary" must include duty availability pay even when it has not been received by the fireman, it would lead to an anomalous situation where individuals such as plaintiffs would have duty availability pay included in the calculation of their annuities under section 6-140(a) even though their husbands did not receive duty availability pay and no current firefighter is receiving it. We do not think the legislature intended such a result.

¶ 22    Plaintiffs also rely on *Collins v. Retirement Board of the Policemen's Annuity & Benefit Fund—City of Chicago*, 334 Ill. App. 3d 909 (2002). In that case, the appellate court held that

a statutory provision which increased the amount of salary on which a police officer's pension is based by including a duty availability allowance applied to a police officer who had retired while on duty disability and, therefore, that the officer could take advantage of the provision by retroactively contributing the appropriate employee contribution to the pension fund. Because *Collins* interpreted provisions of the Pension Code other than those at issue here, the case is inapposite.

¶ 23    Pursuant to the plain language of section 6-111(i), only duty availability pay received by the fireman is included in the salary calculation under section 6-140(a). In this case, there is no dispute that plaintiffs' husbands did not receive duty availability pay. Accordingly, the appellate court erred in concluding that summary judgment should be granted plaintiffs. We reverse the judgment of the appellate court with respect to count III of plaintiffs' complaint and affirm the judgment of the circuit court granting summary judgment to the Board.

¶ 24    The appellate court also concluded that class certification was proper with respect to count III of plaintiffs' complaint. 2012 IL App (1st) 111625, ¶¶ 22-33. However, because we have determined that plaintiffs do not have a valid cause of action under count III, it necessarily follows that class certification is inappropriate. See, *e.g.*, *Schlessinger v. Olsen*, 86 Ill. 2d 314, 318 (1981) ("no class action can proceed unless a cause of action is stated"). We therefore reverse that portion of the appellate court's judgment which determined that class certification of count III was appropriate.

¶ 25                             Cross-Appeal

¶ 26    Plaintiff Elaine Hooker died in September 2010. In the circuit court, Elaine's son, Daniel Hooker, was substituted as special representative and the case continued. Subsequently, while plaintiffs' case was before the appellate court, Daniel asked the appellate court to consider a new issue, specifically, whether a collective-bargaining agreement between the City of Chicago and the firefighters' union which accorded retroactive benefits to firefighters applied to the final determination of Elaine's benefits, even though the collective-bargaining agreement was not ratified until after her death. The appellate court declined to reach this issue because it had not been raised in the circuit court. 2012 IL App (1st) 111625, ¶¶ 35-36.

¶ 27    In a cross-appeal, Daniel asks this court to reverse the judgment of the appellate court and address the merits of the issue. At the same time, however, Daniel has informed this court that, following the appellate court's decision, a separate lawsuit was filed in the circuit court which alleged that the new collective-bargaining agreement applied to Elaine; that the circuit court ruled against Elaine's estate; and that the matter is now pending in the appellate court. Because a separate lawsuit has been filed and the matter is currently being litigated, we decline to reach the merits of the applicability of the new collective-bargaining agreement. We therefore affirm that portion of the appellate court judgment which declined to reach this issue.

¶ 28    Finally, both plaintiffs and the Board have filed motions to strike portions of their opponents' briefs. Both motions are denied.

¶ 29                                                    Conclusion

¶ 30        For the foregoing reasons, the judgment of the appellate court is reversed in part and affirmed in part. The judgment of the circuit court is affirmed.

¶ 31        Appellate court judgment reversed in part and affirmed in part.

¶ 32        Circuit court judgment affirmed.

¶ 33        JUSTICE THEIS, dissenting:

¶ 34        I respectfully dissent from the majority opinion because I believe the opinion departs from the plain language of the Pension Code. Based upon the plain language of the Code, the Board was required to include duty availability pay as part of the "current annual salary" in calculating a widow's duty-related annuity.

¶ 35        It is undisputed that since 1992, the collective-bargaining agreement between the City of Chicago and the Chicago Firefighters Union, Local 2, has included compensation known as "duty availability pay" for all firemen, except certain employees assigned to platoon duty. The payment amounts are the same for all employees covered by the labor contract and have increased with every contract year. For example, in 2004, under the then-existing collective-bargaining agreement, a fireman received $680 per quarter in duty availability pay regardless of rank and grade. In 2012, that amount was increased to $805 per quarter for all ranks and grades. It is further undisputed that between 1994 and 2004, duty availability pay was not included in the calculation of a fireman's salary under the Pension Code. However, in 2004, the Pension Code was amended to include duty availability pay in calculating a fireman's salary. 40 ILCS 5/6-111(i) (West 2004).

¶ 36        The Board maintains that the widows' duty-related annuity does not include duty availability pay because their husbands did not receive this compensation prior to their deaths. The widows disagree, arguing that under the unambiguous language of sections 6-140(a) and 6-111(i) of the Pension Code, their annuity is not based upon their husbands' salary but, rather, is based on the current salary for the positions their husbands attained as firefighters, and that the current salary for those positions includes duty availability pay. Therefore, they argue the Board miscalculated their annuities by failing to include the duty availability pay in that calculation.

¶ 37        As expressed by the majority, the central issue in this case turns on the interpretation of the Pension Code. The principles guiding our review are familiar. The primary objective of statutory construction is to ascertain and give effect to the legislature's intent. *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 15. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 552 (2009). "[O]ne of the fundamental principles of statutory construction is to view all of the provisions of a statute as a whole. [Citation.] Words and phrases should not be construed in isolation, but interpreted in light of other relevant portions of the statute so that, if possible, no

- 7 -

term is rendered superfluous or meaningless." *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002).

¶ 38   We must consider the relevant statutory provisions with these guiding principles in mind. Section 6-140(a) of the Pension Code provides in pertinent part:

> "The annuity for the widow of a fireman whose death results from the performance of an act or acts of duty shall be an amount equal to 50% of the *current annual salary* attached to the classified position to which the fireman was certified at the time of his death and 75% thereof after December 31, 1972." (Emphasis added.) 40 ILCS 5/6-140(a) (West 2008).

This court long ago construed the words "current annual salary" to plainly mean that the annuity was based upon the *current* salary of a fireman and was flexible, increasing with the changes in their salaries as provided for under the applicable budget appropriations. *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 215 (1983). As noted by the majority, this court expressly rejected the notion that the "current" salary meant that the annuity was based upon the deceased fireman's salary at the time of his death. *Id*. at 216. This court also stated that the General Assembly "was cognizant of the increased expense of the type of open-ended and fluctuating public pension benefit it was adopting." *Id*. at 218.

¶ 39   Thus, in *Kozak*, we recognized that widows might receive benefits greater than their husbands' salaries at the time of their deaths (*Kozak*, 95 Ill. 2d at 220 ("the fact that the legislature treats widows of firefighters killed in the line of duty more generously than the beneficiaries of other pension statutes is neither absurd nor impossible to understand")), and recognized that the amount of the annuity is not dependent upon the deceased firefighter's salary but, rather, upon the "current annual salary attached to the classified position to which the fireman was certified at the time of his death." 40 ILCS 5/6-140(a) (West 2008). This construction has been consistently upheld since 1983, and the legislature is presumed to be aware of judicial decisions interpreting this legislation. *Cripe v. Leiter*, 184 Ill. 2d 185, 197-98 (1998). Notably, the Pension Code has been amended several times since 1983 (see Pub. Act 92-50, § 5 (eff. July 12, 2001); Pub. Act 93-654, § 5 (eff. Jan. 16, 2004)), and the legislature has not altered the language of this statute in response to this court's holding.

¶ 40   To determine whether the current annual salary of a fireman includes duty availability pay, we must consider the Pension Code's definition of "salary." Under the statute, "salary" is defined as the "actual amount of the annual salary attached to the permanent career service rank held by the fireman." 40 ILCS 5/6-111(d) (West 2008). In 2004, the General Assembly expanded on that definition as follows:

> "the salary of a fireman, *as calculated for any purpose under this Article*, shall include any duty availability pay received by the fireman (i) pursuant to a collective bargaining agreement ***, and references in this Article to the salary attached to or appropriated for the permanent assigned position or classified career service rank, grade, or position of the fireman shall be deemed to include that duty availability pay." (Emphasis added.) 40 ILCS 5/6-111(i) (West 2008).

- 8 -

Thus, under the Pension Code, prior to 2004, duty availability pay was not included in the calculation of salary for any purposes under the Pension Code. However, as of 2004, the legislature has determined that the salary of a fireman, as calculated for *any* purpose, including a widow's annuity under section 6-140, includes that duty availability pay received by the fireman pursuant to a collective-bargaining agreement. 40 ILCS 5/6-111(i) (West 2008).

¶ 41    It is at this point that the majority abandons our rules of statutory construction. Rather than harmonizing the two relevant statutory provisions, the majority assumes that we are considering a widow's husband's salary. If we were calculating the widows' husbands' salary then I would agree with the majority that duty availability pay was not received by them and, therefore, would not be included in the calculation of their salary. Nevertheless, in the context of calculating a section 6-140 widow's duty-related annuity, as explained, the salary is based on the currently employed firefighter who has attained the same position as the widow's husband. Accordingly, the reference to "the salary of a fireman" in section 6-111(i) is not a reference to the widow's husband's salary but, rather, a currently employed fireman.

¶ 42    Reading the plain language of the Pension Code, and reading the two statutory provisions in harmony as we must, for purposes of calculating the widow's annuity under section 6-140, the current annual salary of a fireman includes that duty availability pay received by the fireman under the applicable collective-bargaining agreement. Whether these particular widows' husbands received duty availability pay is of no consequence. By failing to read sections 6-111(i) and 6-140 as a whole, the majority erroneously concludes that the legislature intended that the widows' duty-related annuity calculation be based on whether their husbands received the compensation as part of their salary.

¶ 43    Additionally, the majority's opinion inexplicably omits critical language in section 6-111(i) which expands the definition of salary "as calculated for *any* purpose," under the Pension Code. (Emphasis added.) 40 ILCS 5/6-111(i) (West 2008). As we have previously recognized, the legislature knows how to express a limiting intent where it so desires. The failure to do so in this statute evinces that it did not have such intent with respect to the widow's annuity under section 6-140. We cannot read that language out of the statute. The majority's construction also renders the meaning of "current" in section 6-140 superfluous, in direct conflict with the principle that we aim to construe a statute such that no term is rendered meaningless (*Land*, 202 Ill. 2d at 402), and is in direct conflict with our long-standing decision in *Kozak*.

¶ 44    Moreover, contrary to the majority opinion, under the plain language of the statute there is no anomaly presented. If the collective-bargaining agreement no longer provides for duty availability pay in the future, then based on the express language of section 6-111(i), duty availability pay will not be included in the calculation of the current annual salary of a fireman because it will not have been *received* by the fireman under the applicable collective-bargaining agreement. 40 ILCS 5/6-111(i) (West 2008). Rather, the anomaly is created by the majority's construction as nothing in the statute supports a multitiered system for section 6-140 widows' annuities based on whether certain compensation was received by their husbands.

¶ 45        For all of these reasons, I would hold that based upon the plain language of the Pension Code, the Board was required to include duty availability pay as part of the "current annual salary" in calculating the widows' duty-related annuity.

¶ 46        JUSTICE KILBRIDE joins in this dissent.